# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### JULY 1998 SESSION



FILED

August 20, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | NO. 02C01-9712-CR-00466 |
| Appellee, | ) | |
| | ) | SHELBY COUNTY |
| VS. | ) | |
| | ) | HON. ARTHUR T. BENNETT, |
| JOSEPH L. GRANDERSON, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (First Degree Murder) |

**FOR THE APPELLANT:**

A.C. WHARTON, JR.
Shelby County Public Defender

BETTY J. THOMAS (At Trial)
W. MARK WARD (On Appeal)
Assistant Public Defenders
201 Poplar Avenue, Suite 201
Memphis, TN 38103-1947

**FOR THE APPELLEE:**

JOHN KNOX WALKUP
Attorney General and Reporter

ELIZABETH T. RYAN
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

WILLIAM L. GIBBONS
District Attorney General

LEE V. COFFEE
Assistant District Attorney General
201 Poplar Avenue, Suite 301
Memphis, TN 38103-1947

**OPINION FILED:** _____

**AFFIRMED**

**JOE G. RILEY,**
**JUDGE**

**OPINION**

The defendant, Joseph L. Granderson, was convicted by a Shelby County jury of premeditated first degree murder and was sentenced to life imprisonment. On appeal, he asserts that the evidence is insufficient to sustain his conviction because (1) the state failed to prove premeditation beyond a reasonable doubt; and (2) the jury wrongly rejected his claim of self-defense. After a thorough review of the record before this Court, we find that the evidence is sufficient to support the jury's finding of guilt. Therefore, the judgment of the trial court is affirmed.

**FACTS**

At approximately 11:30 p.m. on November 10, 1995, Michael Pipkin (the victim) and Michael Peete went to L.D.'s Lounge, a late-night club in Memphis. Approximately thirty (30) minutes after their arrival, Pipkin and Peete saw the defendant. The defendant was the father of Pipkin's step-children and was introduced to Peete by Pipkin. Peete testified at trial that defendant and Pipkin did not argue or exchange angry words. He further stated that defendant's speech was not slurred, and he did not appear to be intoxicated.

Subsequently, Pipkin and Peete returned to their table. When they came out of the restroom, defendant was no longer standing at the bar. Approximately one (1) hour later, Peete saw defendant standing at the front door of the lounge shooting at Pipkin. Peete ducked out of the way and heard Pipkin shout, "I'm hit!" Pipkin received gunshot wounds to his right arm, abdomen and pelvis. He died on November 17, caused by a pulmonary embolus[1] due to gunshot wounds to the abdomen and pelvis.

Peete testified that Pipkin and defendant did not fight or argue that night, nor did the victim ever threaten the defendant. He also stated that Pipkin was not

---

[1] Dr. Jerry Francisco, the Shelby County Medical Examiner, described a pulmonary embolus as a blood clot which travels to the lungs and shuts off the blood flow.

carrying a weapon at the time he was shot.

Tony Coleman, a part-time employee at L.D.'s, testified that he saw the defendant running out of the lounge after the shooting. He watched the defendant run across the street, and defendant did not appear intoxicated as he was not stumbling. Louis Conley, the owner of the establishment, was standing next to defendant during the shooting. He, too, did not see any indication that defendant was intoxicated.

Wanda Pipkin, the victim's wife, testified that she and defendant were romantically involved for several years and had two (2) sons. Their relationship ended in 1993, and she began dating the victim approximately one (1) year later. The defendant was jealous of her relationship with the victim and told her that he did not want her to "mess with anyone else." In late summer 1995, defendant and the victim were involved in several altercations as a result of this jealousy. During this time, Mrs. Pipkin was pregnant, and defendant threatened to kill her unborn child because he did not want her to have children "by nobody [sic] else but him." Defendant also made threats to kill Pipkin. Mrs. Pipkin testified that the defendant often carried a weapon, but the victim did not.

The defendant telephoned Mrs. Pipkin on the night after the shooting. She asked the defendant if he shot her husband, which he denied. He told her that he was in Mississippi the previous night. Although defendant was arrested for the offense on November 25, he continually denied involvement to Mrs. Pipkin until September 1996, when he admitted that he shot the victim "out of fear."

Defendant testified on his own behalf at trial. He stated that he drank excessively, suffered memory loss when he drank and was unable to "function" if he drank in excess. He stated that the victim threatened him repeatedly and was the aggressor in the various altercations between the two men. He testified that as a result of these conflicts, he began carrying a gun out of fear for his safety.

Defendant testified that on November 10, he drank an excessive amount of various alcoholic beverages. He arrived at L.D.'s at approximately 11:00 p.m., and saw Pipkin and Peete shortly thereafter. Although he was afraid of Pipkin, he

remained at the club. Defendant was carrying a gun at the time. While he was sitting at a table, he and Pipkin made eye contact. Pipkin began staring at him, giving him a "hard look." As the defendant was about to leave, Pipkin "really started looking at [defendant]." Defendant testified that he felt threatened by the victim's presence in the lounge. He stated that the victim made a move as if to reach for a weapon, and defendant shot him "out of fear." He then ran from the club and went to his sister's house.

He further testified that he did not remember shooting Pipkin until after Pipkin died. Although he claimed at trial that he was afraid of the victim, defendant acknowledged that the victim never threatened him that night, and he never saw the victim with a weapon.

In rebuttal, the state presented the testimony of the two (2) homicide detectives who questioned defendant concerning this offense. Both detectives testified that defendant never mentioned that the victim appeared to be reaching for a weapon when defendant shot him. The defendant's transcribed statement corroborates their testimony.

The jury found defendant guilty of premeditated first degree murder. Defendant now brings this appeal.

## SUFFICIENCY OF THE EVIDENCE

In his sole issue on appeal, defendant challenges the sufficiency of the convicting evidence. Specifically, defendant contends that the state failed to prove premeditation beyond a reasonable doubt, in light of the evidence that he was intoxicated at the time of the offense. He also argues that the jury wrongly rejected his claim of self-defense. Therefore, he alleges that the evidence is insufficient for a rational trier of fact to find him guilty beyond a reasonable doubt.

### A. Standard of Review

When an accused challenges the sufficiency of the evidence, this Court must review the record to determine if the evidence adduced during the trial was sufficient

4

"to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

### B. Premeditation

The law is well-established in Tennessee that all homicides are presumed to be murder in the second degree. State v. West, 844 S.W.2d 144, 147 (Tenn. 1992); State v. Brown, 836 S.W.2d 530, 543 (Tenn. 1992). The state bears the burden to prove premeditation in order to elevate the offense to murder in the first degree. Id.

At the time the offense was committed, first degree murder was defined as the "premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1) (Supp. 1995).[2] A premeditated act is one "done after the exercise of

---

[2] As a result of the 1995 amendment to Tenn. Code Ann. § 39-13-202, "deliberate" is no longer a required element of first degree murder. *See* 1995 Public Acts, Chapter 460. Since the instant offense was committed after July 1, 1995, "deliberate" was not a required element of first degree murder.

Nevertheless, the indictment included the word "deliberately," and the trial court charged the jury that this was an element of the offense. Regardless, the proof established

reflection and judgment." Tenn. Code Ann. § 39-13-201(d) (Supp. 1995).

The element of premeditation may be established by the circumstances surrounding the offense. State v. Bordis, 905 S.W.2d 214, 221 (Tenn. Crim. App. 1995); State v. Gentry, 881 S.W.2d 1, 3 (Tenn. Crim. App. 1993). Indeed, in State v. Brown, *supra*, our Supreme Court recognized:

> there may be legitimate first-degree murder cases in which there is no direct evidence of the perpetrator's state of mind. Since that state of mind is crucial to the establishment of the elements of the offense, the cases have long recognized that the necessary elements of first-degree murder may be shown by circumstantial evidence. Relevant circumstances recognized by other courts around the country have included the fact "that a deadly weapon was used upon an unarmed victim; that the homicidal act was part of a conspiracy to kill persons of a particular class; that the killing was particularly cruel; that weapons with which to commit the homicide were procured; that the defendant made declarations of his intent to kill the victim; or that preparations were made before the homicide for concealment of the crime, as by the digging of a grave."

836 S.W.2d at 541-42 (quoting C. Torcia, *Wharton's Criminal Law* § 140 (14th ed. 1979)(emphasis added).

In the present case, defendant made prior repeated threats to kill the victim. When he saw the victim on the night of November 10, defendant had a weapon in his possession. Although the victim was unarmed and had not threatened the defendant that night, defendant shot the victim without provocation. The evidence was sufficient for a jury to find that defendant killed the victim with premeditation.

### C. Intoxication

We are unpersuaded by defendant's argument that his intoxication prevented him from possessing the requisite culpable mental state. Voluntary intoxication is not a defense to a prosecution, but evidence of intoxication is admissible "if it is relevant to negate a culpable mental state." Tenn. Code Ann. § 39-11-503(a); State v. Williamson, 919 S.W.2d 69, 79 (Tenn. Crim. App. 1995). Whether a defendant is too intoxicated to form the requisite mental state is a question for the jury to determine as the sole trier of fact. State v. Howard, 926 S.W.2d 579, 584 (Tenn. Crim. App. 1996); State v. Brooks, 909 S.W.2d 854, 859 (Tenn. Crim. App. 1995).

Defendant testified that he drank an excessive amount of alcoholic

---

this element just as it did premeditation.

6

beverages on the night of the incident. However, he also stated that when he drank heavily, he could not "function." Coleman, Conley and Peete all testified that they saw no indication that defendant was intoxicated. Defendant's speech was not slurred, his eyes were not red, and he was not stumbling as he ran from the lounge. The jury was properly charged as to intoxication. The jury was well within their prerogative in finding that the defendant's "intoxication" did not negate his culpable mental state. State v. Howard, 926 S.W.2d at 584.

This issue is without merit.

### D. Self-Defense

Defendant also argues that the jury unreasonably rejected his claim of self-defense. He claims that he was fearful of the victim. When he saw the victim on November 10, defendant stated he felt threatened by Pipkin's presence at the lounge because the victim was giving him a "hard look." He contends that when he began to leave the club, the victim made a move as if to reach for a weapon, and defendant shot him "out of fear." The state's proof contradicted this contention. Furthermore, there was testimony that defendant had previously threatened to kill the victim. Defendant acknowledged that he never saw the victim with a weapon, and the victim did not threaten him on the night of the incident.

Whether the defendant acted in self-defense is a factual determination to be made by the jury. State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); State v. Ivy, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993). The jury was properly charged as to self-defense. The jury could have reasonably concluded that the defendant was not justified in shooting the victim in self-defense. This Court is not at liberty to disturb the jury's finding in light of the evidence.

This issue is without merit.

### CONCLUSION

The evidence was sufficient for a rational trier of fact to find that defendant was guilty of premeditated first degree murder beyond a reasonable doubt.

7

Accordingly, the judgment of the trial court is affirmed.

_____
**JOE G. RILEY, JUDGE**

**CONCUR:**

_____
**CURWOOD WITT, JUDGE**

_____
**ROBERT W. WEDEMEYER, SPECIAL JUDGE**

8