**STATE of Tennessee, Appellee,**

v.

**Michael J. HOWARD, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

March 27, 1996.

Marvin E. Ballin, Ballin & Ballin, P.C., Memphis, for Appellant.

Charles W. Burson, Attorney General and Reporter, Michael J. Fahey, II, Assistant Attorney General, Nashville, John W. Pierotti, District Attorney General, and Jennifer S. Nichols, Asst. District Attorney General, Memphis, for Appellee.

1. It is the policy of this court to withhold the identity of children involved in sexual abuse.

*OPINION*

WADE, Judge.

The defendant, Michael J. Howard, appeals his conviction for aggravated sexual battery. The trial court initially imposed a Range I sentence of eight years, to be suspended to require the defendant to serve a two-year sentence with the Community Corrections Program. Later, the trial court rescinded the suspended sentence, reinstated the eight-year sentence, and fined the defendant $5,000.

In this appeal of right, the defendant challenges the sufficiency of the evidence and presents the following additional issues for review:

(1) whether the trial court erred in ruling that the seven-year-old witness was competent to testify;

(2) whether the seven-year-old witness lacked personal knowledge of the facts as required under Tenn.R.Evid. 602 for testimony; and

(3) whether the trial court erred by failing to instruct assault as a lesser included offense.

We reverse the conviction and remand for a new trial.

The six-year-old victim, HM [1], lived in Arkansas with her mother and visited her father, Craig McKee, in Memphis on an every-other-weekend basis. Her father lived in an apartment complex near that of the defendant's.

At about 10:00 a.m. on July 19, 1993, the defendant returned from his work at McDonald's Restaurant. His friend, William Clifford Arnold, joined him about an hour and thirty minutes later. They drank throughout the day. While at the apartment pool, the defendant saw the victim and her stepsister, BM, playing in a new tent which had been purchased by the victim's parents in preparation for a camping trip. Later, the parents agreed to allow the victim and BM to sleep in the tent overnight.

*State v. Schimpf,* 782 S.W.2d 186, 188 n. 1 (Tenn. Crim.App.1989).

At about 10:00 p.m., the victim and BM put on their rollerblades and went up a hill near the defendant's apartment. The defendant and Arnold spoke to the children. BM recognized the defendant because he had once borrowed tools from her father. When the victim and BM got back to their tent, the victim's parents told them to either go to sleep or return to the apartment. The victim and BM then zipped their tent shut and went to sleep.

The victim woke up due to the heat and rolled over to see the defendant facing her. She testified that he was wearing a bandanna with a skeleton and bones. According to the victim, the defendant began "rubbing [her] on ... the back of [her] legs and [her] bottom." When the defendant tried "to get between [her] legs," the victim resisted. The defendant also tried to pull down the victim's bathing suit strap but the victim pulled it back up. The victim began to cry, and the defendant told her to stop. He then tried to make the victim suck his thumb; the victim testified that "[h]e got his thumb in my mouth but I kept my teeth closed."

Arnold, who had followed the defendant, told the defendant that he should go back to the apartment. The defendant told him to leave him alone and that he was drunk. Arnold left the tent and returned to the apartment to smoke a cigarette. Later, he came back to the tent to try to get the defendant to leave. The victim testified that she remembered "almost five people" who came to try to get the defendant to leave. It appeared to Arnold that the defendant had fallen asleep. He testified that the defendant still had one of his hands on "[the victim's] buttocks area of her body." Arnold removed the defendant's hand and shook the defendant's leg in an attempt to wake the defendant. When the defendant responded that "he was drunk and was going to sleep there," Arnold went back to the apartment and fell asleep on the couch.

After Arnold left, BM went inside her apartment and told her mother that a man was inside the tent. When she saw the defendant inside, Ms. McKee hit him at least three times as he attempted to get out of the

tent, knocking the bandanna off his head. The defendant claimed that he returned to his apartment and passed out again.

At trial, Arnold testified that when he asked the defendant what had happened, the defendant answered, "You know what's going on. I got caught ... [and] if [you don't] want to go to jail, ... [you need] to leave." Arnold stated that he then left the apartment.

When Officer James Taylor Lynn, Jr., and his partner, Officer Mark Richardson, of the Memphis Police Department arrived, they discovered Arnold arguing with the victim's father. They entered the defendant's apartment with the assistance of Mr. McKee, the maintenance person. The defendant was under the covers of his bed dressed only in his underwear. According to Officer Lynn, the defendant "acted nervous, ... was sweating, and ... was red."

The victim's stepmother, Vicki Rae McKee, testified that the victim told her immediately after the police arrived "[t]hat [the defendant touched] her bottom and her legs and that he had tried to get her bathing suit off." The victim also told Ms. McKee that the defendant "tried to make her suck his thumb but she had kept her teeth together so he couldn't get his thumb in her mouth ... [a]nd that he was kissing her all over."

The victim's eight-year-old stepsister, BM, testified that she woke up when she heard the victim crying. She testified that the defendant entered the tent as they slept and was lying between her and the victim when she awoke. She recognized the defendant as the man she had seen earlier that night. BM stated that Arnold, who came later, "[felt her] all over ... and ... on her privates."[2]

Arnold, who had been a friend of the defendant's for several years, testified for the state. Having plead guilty to aggravated sexual battery of BM and having received an eight-year sentence, he stated the defendant told him that "[h]e wanted to have sex" and "was horny and that he was going to find the two ladies that had just [rollerbladed off]." Arnold also testified that he saw the defen-

**2.** Prior to trial, Arnold plead guilty to aggravated sexual battery.

dant "[f]ondling [the victim] on her buttocks and her upper thighs" and that the defendant had his hands "[o]n her legs and ... her buttocks, [and her] lower back...." Arnold, who had been with the defendant before, claimed that the defendant acted like he knew what he was doing. Arnold gave a pretrial statement implicating the defendant but not himself. He claimed that after his arrest, the defendant had said "[w]ell, hell, I might as well went ... all the way." Arnold also testified that he and the defendant had "concocted a story" to tell the detectives; they agreed to say that the defendant was wearing a Miller Genuine Draft hat and not a bandanna.

Officer Clarence E. DeVaughn of the Memphis Police Department also responded to the 911 call. During his investigation, he discovered "a multi-colored head scarf ... [l]aying on the bedding inside the tent ... more towards the back of the tent than towards the front."

The defendant testified at trial that he and Arnold had drunk "about 24 cans or more [of beer]" apiece that day. He described himself as "pretty drunk." The defendant did not deny that he was in the tent that night, but he claimed that he had made the statement to "spend the night in the tent" in jest. The defendant testified that he never knew anyone else was in the tent and that he "[p]assed out" once he was inside. The defendant claimed that he was first aware that he was being charged with a sexual offense on the following day and denied either touching the victim's buttocks, trying to pull her bathing suit strap down, sticking his thumb in her mouth, kissing her, or trying to place his hand between her legs. The defendant denied that he was wearing a bandanna and claimed that he was wearing a Miller Genuine Draft hat on the night of the offense.

Wanda Bates, of the Tennessee Department of Human Services, was called as a witness for the defense. She took statements from the victim on July 20 and 26, 1993. In the second statement, the victim told Ms. Bates that the defendant rubbed her back and the lower part of her leg.

The defendant first claims that the evidence was insufficient because (1) the victim's testimony was inconsistent; (2) there was insufficient evidence to establish that he intentionally touched the victim; or (3) the touching was not for "sexual arousal or gratification."

 On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as triers of fact. *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn.Crim. App.1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Williams*, 657 S.W.2d 405, 410 (Tenn.1983), *cert. denied*, 465 U.S. 1073, 104 S.Ct. 1429, 79 L.Ed.2d 753 (1984); Tenn. R.App.P. 13(e).

Aggravated sexual battery is defined as "unlawful sexual contact with a victim by the defendant or the defendant by a victim [where the victim is less than thirteen (13) years of age]." Tenn.Code Ann. § 39–13–504; *see also* Tenn.Code Ann. § 39–13–502(a)(4). "Sexual contact" is defined as "the intentional touching of the victim's ... intimate parts,[3] or the intentional touching of the clothing covering the immediate area of the victim's ... intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." Tenn.Code Ann. § 39–13–501(6). A person "acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." Tenn.Code Ann. § 39–11–302(a).

---

**3.** " 'Intimate parts' includes the primary genital area, groin, inner thigh, buttock or breast of a human being[.]" Tenn.Code Ann. § 39–13–501(2).

■ The evidence adduced at trial established that the defendant rubbed the victim's buttocks, legs and back. There was proof that the defendant tried to place his hands between the victim's legs and to force the victim to suck his thumb. The victim's testimony concerning the unlawful sexual contact was corroborated by Arnold. While the defendant claims that his intoxication prevented him from having the required mens rea, there was evidence that the defendant was guilty of an "intentional touching" as shown by the defendant's statement that he was "horny" and that he wanted to find the victim and BM. The trial court instructed the jury on the defense of voluntary intoxication and the jury rejected the defense. That was their prerogative. The six-year-old victim clearly met the "less than thirteen [13] years of age" element. Thus, we find no merit to the claim.

### I

The defendant claims that the trial court erred by finding that the victim, age seven at the time of the trial, was competent to testify. More specifically, the defendant argues that the trial court failed to follow the requirements necessary to determine if a child is competent.

■ Competency of a witness is controlled by Tenn.R.Evid. 601 and 603. Tenn.R.Evid. 601 provides:

Every person is presumed competent to be a witness except as otherwise provided in these rules or by statute.

Tenn.R.Evid. 603 provides:

Before testifying, every witness shall be required to declare that the witness will testify truthfully by oath or affirmation, administered in a form calculated to awaken the witness's conscience and impress the witness's mind with the duty to do so.

The common law rule is that if the child "understands the nature and meaning of an oath, is of sufficient intelligence to comprehend the things about which [s]he is called to testify, and is capable of knowing and relating the facts accurately," the child is deemed competent to testify. *State v. Ballard,* 855

S.W.2d 557, 560 (Tenn.1993); *State v. Fears,* 659 S.W.2d 370, 375 (Tenn.Crim.App.1983).

Through questioning, the witness testified that she knew the difference between telling the truth and telling a "story." She acknowledged that "it's good to tell the truth and it's bad to tell a lie." The victim testified that she had learned from her mother, a school teacher, and her church that she would get in trouble if she did not tell the truth. She stated that she knew that she could not "cross her fingers" and tell a lie during her testimony.

■ The determination of the competency of a minor witness is properly a matter within the discretion of the trial court, who has the opportunity to observe the witness "up close and personal." That decision will not be overturned absent a showing of abuse of that authority. *State v. Caughron,* 855 S.W.2d 526, 538 (Tenn.), *cert. denied,* 510 U.S. 979, 114 S.Ct. 475, 126 L.Ed.2d 426 (1993); *State v. Braggs,* 604 S.W.2d 883, 885–86 (Tenn.Crim.App.1980).

■ In our view, the record clearly demonstrates that the victim understood the nature of her oath. *See State v. Mack A. Atkins,* No. 03C01–9208–CR–00285, 1993 WL 213965 (Tenn.Crim.App., at Knoxville, June 17, 1993), *perm. to app. denied* (Tenn.1993) (six-year-old witness was competent to testify). While the trial court did not question the witness directly, the questions by counsel established the competency of a child witness. *See State v. Ballard,* 855 S.W.2d at 560 (stating that the "purpose of determining competency of the witness in child sexual abuse cases is to allow a victim to testify if it can be determined that the child understands the necessity of telling the truth while on the stand."). In *Ballard,* our supreme court upheld the trial court's determination of competency, finding that "[a]lthough the trial judge did not follow verbatim the requirements in *State v. Fears,* [citation omitted] he did determine that the child appreciated the difference between truth and falsehood and that the child promised to tell the truth during questioning." 855 S.W.2d at 560. That is the case here; thus, we do not find that the trial court abused its discretion by allowing the child to testify.

## II

Next, the defendant argues that the trial court should have excluded the victim's testimony based upon the "lack of personal knowledge rule." Specifically, he claims that the victim's testimony was improperly influenced by the victim's mother through direct and indirect conversations. The defendant bases his argument on the victim's statement on cross-examination that she knew about certain aspects of the case through discussions with BM or from overhearing her mother's conversations with friends.

■■■ The "lack of personal · knowledge rule" is generally defined as follows:

A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness's own testimony. . . .

Tenn.R.Evid. 602. Also known as the "first-hand knowledge rule," this provides that a witness is not competent to testify unless he or she perceived the facts through one or more of the five senses. *State v. Boling*, 840 S.W.2d 944, 949 (Tenn.Crim.App.1992). A trial court may exercise discretion in deciding whether to admit or exclude testimony, and its decision will not be reversed on appeal unless a showing is made that the trial court arbitrarily exercised its discretion. *State v. Hawk*, 688 S.W.2d 467, 472 (Tenn. Crim.App.1985).

■■■ Here, the victim clearly testified from first-hand observations. Although her recollection conflicted with that of other witnesses, the jury has the duty to weigh the testimony and reconcile any inconsistencies. *See State v. Cabbage*, 571 S.W.2d at 835.

■■■ Those answers given by the victim that were not based on personal observation had to do with what occurred after the touching. The answers may have qualified as objectionable hearsay, but were not essential to the state's case. Here, defense counsel was permitted to develop the inconsistencies in the victim's testimony and challenge her credibility. The jury's decision to accredit the victim's testimony was within their pre-rogative. We do not believe that the trial court abused its discretion in allowing the victim's testimony.

## III

Next, the defendant asserts that the trial court erred by refusing to instruct the jury on assault, a lesser included offense of aggravated sexual battery. The state argues that there was no evidence to support an instruction on a lesser included offense, and therefore, there was no error in the omission.

■■■ The trial court has a duty to give a complete charge of the law applicable to the facts of the case. *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn.), *cert. denied*, 476 U.S. 1153, 106 S.Ct. 2261, 90 L.Ed.2d 705 (1986). It is settled law that "where there are any facts that are susceptible [to an inference] of guilt on any lesser included offense or offenses, then there is a mandatory duty upon the trial judge to charge on such offense or offenses. Failure to do so denies a defendant his constitutional right of trial by a jury." *State v. Wright*, 618 S.W.2d 310, 315 (Tenn.Crim.App.1981) (citations omitted). When there is a trial on a single charge of a felony, there is also a trial on all lesser included offenses, "as the facts may be." *Strader v. State*, 210 Tenn. 669, 675, 362 S.W.2d 224, 227 (1962); *see State v. Tutton*, 875 S.W.2d 295, 297 (Tenn.Crim.App. 1993); *State v. Banes*, 874 S.W.2d 73, 80 (Tenn.Crim.App.1993). If the jury decides that the defendant is not guilty of the principal offense, they may convict the defendant of any lesser included offense that the evidence supports. Trial courts may omit an instruction on a lesser included offense only when the record is devoid of evidence to support an inference of guilt of the lesser offense. *State v. Stephenson*, 878 S.W.2d 530, 550 (Tenn.1994); *State v. Boyd*, 797 S.W.2d 589, 593 (Tenn.1990), *cert. denied*, 498 U.S. 1074, 111 S.Ct. 800, 112 L.Ed.2d 861 (1991); *State v. Dulsworth*, 781 S.W.2d 277, 287 (Tenn.Crim.App.1989). There is an affirmative duty on the part of the trial judge to charge the jury on lesser included offenses charged in the indictment whether requested to do so or not. *See Howard v. State*, 578 S.W.2d 83, 85 (Tenn.1979).

Here, the defendant was charged with aggravated sexual battery, defined as "unlawful sexual contact with a victim by the defendant or the defendant by a victim [where the victim is less than thirteen (13) years of age]." Tenn.Code Ann. § 39–13–504. Assault, defined in Tenn.Code Ann. § 39–13–101(a)(3) as "[i]ntentionally or knowingly caus[ing] physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative," is clearly a lesser included offense. *State v. Grady E. Shoffner*, No. 03C01–9403–CR–00113, slip op. at 10, 1995 WL 382628 *5 (Tenn.Crim.App., at Knoxville, June 27, 1995) (citing *Strader v. State*, 210 Tenn. 669, 362 S.W.2d 224 (1962)). Defense counsel requested that the trial court instruct the jury on assault. The trial court, however, charged the jury only on aggravated sexual battery and sexual battery. At the time of the offense, sexual battery, both a lesser grade or class offense and a lesser included offense [4], was defined as unlawful sexual contact with another accompanied by one of three elements: (1) force or coercion by the defendant, (2) the defendant knew or had reason to know that the victim is mentally defective or incapacitated or physically helpless, or (3) sexual contact by fraud. Tenn. Code Ann. § 39–13–505 (1991).

While the defendant does not dispute the fact that he was in the tent, he contends that there was insufficient proof that his actions were intentional due to his intoxicated state. The defendant testified on direct examination as follows:

Q: You're not saying that your hands couldn't have touched this child, are you?

A: No, sir.

Q: You're not saying that's an impossible fact that you may have touched this child?

A: No, sir.

Q: Did you touch her for your sexual gratification?

A: No, sir.

Q: Are you sure?

A: Positive.

On cross-examination, the defendant explained that "[his] hand might've hit her ... [w]hen [he] scratched her or something." The defendant contended, however, that the touching was not of a sexual nature. *See Hershel Clark v. State*, No. 02C01–9112–CR–00273, 1993 WL 188052 (Tenn.Crim.App., at Jackson, June 2, 1993). The defendant did not deny the charge that he had touched the victim. Nor does all of the evidence establish that the touching was clearly of a sexual nature, as is the case in the "all or nothing" line of cases which do not require an instruction on a lesser included offense. *See State v. Larry Fields*, No. 11, 1991 WL 35747 (Tenn.Crim.App., at Jackson, March 20, 1991), *perm. to app. denied*, (Tenn.1991); *State v. David H. Owen*, No. 1209, 1989 WL 54805 (Tenn.Crim.App., at Knoxville, May 26, 1989), *perm. to app. denied*, (Tenn.1989).

▬▬▬ To omit the instruction on assault effectively deprived the defendant of his right to jury on that offense. The guiding principle is that if there is *any* evidence from which the jury could have concluded that the lesser included offense was committed, there must be an instruction for the lesser included offense. *See Johnson v. State*, 531 S.W.2d 558, 559 (Tenn.1975) (emphasis added). The testimony of the defendant, even if not persuasive, was susceptible to the conclusion that the defendant's conduct was merely "offensive or provocative," and thus, an assault rather than a sexual battery.

In *State v. Dhikr Abban Boyce*, 920 S.W.2d 224 (Tenn.Crim.App.1995), this court ruled that the failure to instruct on a lesser included offense always requires a new trial. The opinion was based largely upon the ruling of our supreme court in *Poole v. State*, 61 Tenn. 288, 294 (1872):

However plain it may be to the mind of the Court that one certain offense has been committed and none other, he must not confine himself in his charge to that offense. When he does so he invades the province of the jury, whose peculiar duty it is to ascertain the grade of the offense. However clear it may be, the Court should

---

4. Our supreme court recently clarified the distinction between a "lesser grade or class" and a "lesser included offense." *State v. Trusty*, 919 S.W.2d 305 (Tenn.1996).

never decide the facts, but must leave them unembarrassed to the jury.

 Here, the jury may have convicted the defendant of the greater offense of aggravated sexual battery even if the lesser offense had been charged. Yet the law clearly mandated an instruction on the lesser included offense. Among the most treasured of all of our constitutional protections is the right to a trial by a jury of our peers; a refusal to charge a lesser included offense, even if relatively scant testimony supports such an offense, deprives a defendant of that right. We must, therefore, hold that the trial court's failure to instruct warrants the grant of a new trial.

We also observe that the trial court provided incorrect instructions on the elements of aggravated sexual battery and sexual battery. Although the defendant did not raise the issue at trial or on appeal, we have decided to address the issue in view of the remand. *See* Tenn.R.App.P. 36(a).

At the conclusion of the proof, the trial court instructed the jury that aggravated sexual battery included the following elements:

(1) that the defendant had unlawful sexual contact with the alleged victim or the alleged victim had unlawful sexual contact with the defendant;

(2) the alleged victim was less than thirteen (13) years of age;

(3) that the defendant acted *intentionally, knowingly* or *recklessly.*

(emphasis added). The trial court also instructed the jury that sexual battery was defined as "the defendant [having] unlawful sexual contact with the alleged victim or the alleged victim [having] unlawful sexual contact with the defendant," either *"intentionally, knowingly or recklessly."* (emphasis added).

 This court has previously held that the elements of aggravated sexual battery contain different culpable mental states.[5] *State v. Parker,* 887 S.W.2d 825, 827 (Tenn. Crim.App.1994). The statutes expressly provide that "sexual contact" requires "the *intentional* touching of the victim's ... inti-

mate parts or the *intentional* touching of the clothing covering the immediate area of the victim's ... intimate parts, if that *intentional* touching can be reasonably construed as being for the purpose of sexual arousal or gratification." Tenn.Code Ann. § 39–11–301; Tenn.Code Ann. § 39–13–501(6); Tenn.Code Ann. § 39–13–504 (emphasis added). The definition of aggravated sexual battery, however, neither prescribes nor "plainly dispenses" with the culpable mental state as to whether the victim is less than thirteen years of age. *See* Tenn.Code Ann. 39–13–504(4); Tenn.Code Ann. § 39–11–301(c). Therefore, the terms of Tenn.Code Ann. § 39–11–301(c), requiring mere reckless conduct would apply to that element only. Tenn.Code Ann. § 39–11–301(c) provides as follows:

If the definition of an offense within this title does not plainly dispense with a mental element, *intent, knowledge or recklessness* suffices to establish the culpable mental state.

(emphasis added).

 When an offense has different mens rea for separate elements, the trial court must set forth the mental state for each element clearly so that the jury can determine whether the state has met its burden of proof. Here, that was not done.

 We also note that the jury instruction on sexual battery did not include a charge that one of the following elements must be established by the proof: (1) force or coercion by the defendant, (2) the defendant knew or had reason to know that the victim is mentally defective or incapacitated or physically helpless, or (3) sexual contact by fraud. Tenn.Code Ann. § 39–13–505 (1991). The law requires a complete instruction of the elements of the offense. *See State v. Harbison,* 704 S.W.2d at 319.

Accordingly, the conviction is reversed and the cause is remanded for a new trial.

PEAY and WELLES, JJ., concur.

---

**5.** We acknowledge that the Tennessee Pattern Jury Instructions provide that a person can commit the offenses of aggravated sexual battery or sexual battery by "act[ing] either intentionally, knowingly or recklessly." T.P.I.–Crim. 10.03 (3d ed. 1992); T.P.I.–Crim. 10.04 (3d ed. 1992).