# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### APRIL 1999 SESSION

FILED

June 18, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | **C.C.A. NO. 01C01-9801-CC-00029** |
| Appellee, | ) | |
| | ) | **MONTGOMERY COUNTY** |
| VS. | ) | |
| | ) | **HON. ROBERT W. WEDEMEYER,** |
| **JEFFERY MILLER,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | (First-Degree Murder) |


FOR THE APPELLANT:               FOR THE APPELLEE:


**ROGER K. SMITH**                  **JOHN KNOX WALKUP**
104 Woodmont Blvd., Suite 115       Attorney General & Reporter
Nashville, TN 37205
                                    **ELIZABETH B. MARNEY**
                                    Asst. Attorney General
                                    Cordell Hull Bldg., 2nd Fl.
                                    425 Fifth Ave., North
                                    Nashville, TN 37243-0493

                                    **JOHN W. CARNEY**
                                    District Attorney General

                                    **HELEN YOUNG**
                                    Asst. District Attomey General
                                    204 Franklin St., Suite 300
                                    Clarksville, TN 37040


OPINION FILED:_____


**AFFIRMED**


**JOHN H. PEAY,**
Judge

**O P I N I O N**

The defendant was convicted by a jury of first-degree murder and sentenced to life in prison with the possibility of parole. The defendant's subsequent motion for a new trial was denied by the trial court. The defendant now appeals and contends that the evidence at trial was insufficient to sustain his conviction. After a review of the record and applicable law, we find no merit to the defendant's contention and thus affirm his conviction.

The evidence at trial established that on September 1, 1996, the defendant shot and killed the victim, Josh Kelley. The evidence indicated that earlier that evening, three young ladies, Tennille, Cassie, and Heather, were driving "up and down" Riverside Drive in Clarksville, Tennessee. They visited a motel where Mike Powers, Cassie's boyfriend, was throwing a party. While in the motel room, Tennille saw the defendant preparing to leave the room, at which point someone handed a gun to him. The defendant then left the party. Shortly thereafter, the three young ladies decided to go cruising on Riverside Drive again. They pulled in the parking lot of Page and Taylor's Sporting Goods Store to change drivers. As they were changing seats, a young man in the parking lot told them to "suck [his] dick or leave." The three young ladies left the area and returned to the party at the motel.

When they arrived at the motel, the ladies told Mr. Powers about the young man's comment. At this point, Mr. Powers and the defendant, who had returned to the motel, went to the defendant's car, and the defendant followed the ladies to the parking lot of Page and Taylor's Sporting Goods Store. According to the defendant's second statement to the police, upon arrival at the parking lot, the defendant told Mr. Powers to

2

"get the gun from under the passenger seat." According to at least one witness, when Mr. Powers exited the vehicle, he had a gun in his waistband. The defendant and Mr. Powers then approached a group of teenagers standing in the parking lot. The evidence at trial indicated that Mr. Powers asked which of them had told his girlfriend to "suck [his] dick." In response, the victim stepped forward and said, "We don't know you. We don't know your girlfriend. We didn't say anything to anybody." Mr. Powers then pulled the gun from his waistband and pointed it at the victim. According to one witness, the defendant told Mr. Powers to "cap [the victim]." Mr. Powers lowered the gun to his side, at which point the defendant took the gun out of Mr. Powers' hand. The defendant cocked the gun, pulled the slide back, pointed the gun at the ground in front of the victim's feet, and fired. The defendant then raised the gun, pointed it at the victim's chest, and fired. After the shooting, the defendant and Mr. Powers left the scene.

The defendant now contends that the evidence is insufficient to support his conviction for first-degree murder. Specifically, the defendant argues that the State failed to present proof to establish the elements of premeditation and intent.

A defendant challenging the sufficiency of the proof has the burden of illustrating to this Court why the evidence is insufficient to support the verdict returned by the trier of fact in his or her case. This Court will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

When an accused challenges the sufficiency of the convicting evidence, we

3

must review the evidence in the light most favorable to the prosecution in determining whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). We do not reweigh or re-evaluate the evidence and are required to afford the State the strongest legitimate view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden of illustrating to this Court why the evidence is insufficient to support the verdict returned by the trier of fact. McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

First-degree murder is the premeditated and intentional killing of another person. T.C.A. § 39-13-202(a)(1). Premeditation is defined as "an act done after the exercise of reflection and judgment." T.C.A. § 39-13-202(d).

> 'Premeditation' means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

T.C.A. § 39-13-202(d). Premeditation is the process of thinking about a proposed killing before engaging in the homicidal conduct. See State v. Brown, 836 S.W.2d 530, 540-41 (Tenn. 1992). The existence of premeditation is a question of fact for the jury to determine and may be inferred from the circumstances surrounding the offense. State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997) (citing Brown, 836 S.W.2d at 539). There are several circumstances that can support an inference of premeditation, including the use of a deadly weapon upon an unarmed victim; evidence of procurement of a weapon;

4

and calmness immediately after the killing. Bland, 958 S.W.2d at 660 (citing Brown, 836 S.W.2d at 541-42; State v. West, 844 S.W.2d 144, 148 (Tenn. 1992)).

Here, the evidence taken in the light most favorable to the State indicates that the defendant arrived at the scene of the crime with a gun in his vehicle. The defendant told Mr. Powers to take the gun from underneath the passenger seat of the defendant's car before they exited the vehicle. After Mr. Powers addressed the group of teenagers, the victim approached the defendant and Mr. Powers in a non-threatening manner, never made any sudden moves toward them, and never threatened them in any way. In fact, the victim never directly addressed the defendant. There was no evidence that the victim was in possession of any weapon. Mr. Powers aimed the gun at the victim and the defendant told Mr. Powers to "cap his ass." When Mr. Powers did not shoot the victim, the defendant grabbed the gun and pointed it at the ground in front of the victim's feet. After shooting the ground in front of the victim's feet, the defendant raised the gun, aimed it at the victim, and shot him in the chest. Although at trial the defendant claimed the second shot was an accident, in his first statement to the police the defendant admitted that he had been having homicidal thoughts prior to the shooting. After the shooting, the defendant threw the weapon on top of a nearby building and went back to the party in the motel room.

Whether these facts support a finding of premeditation is a question of fact for the jury. After hearing the testimony at trial, the jury evidently rejected the defendant's assertion that the second shot was accidental as is within their province. In light of the circumstances surrounding the murder, we find the evidence was sufficient to establish that the defendant acted after the exercise of reflection and judgment with a previously formed intent to kill, which supports a finding of premeditation. See T.C.A. § 39-13-

5

202(d).

In addition, it is also apparent that the defendant intended to kill the victim by the nature of his actions. The defendant stood approximately one to four feet away from the victim and pointed a loaded gun at the victim's chest. The defendant then pulled the trigger. It is therefore logical to conclude that the defendant acted with the intent necessary for first-degree murder. See State v. William Alfred Holt, Jr., No. 01C01-9704-CC-00155, Marshall County (Tenn. Crim. App. filed March 27, 1998, at Nashville).

The defendant contends that at the time of the offense he was high on cocaine and therefore unable to form the necessary culpable mental state. At trial, the defendant asserted that he ingested approximately one gram of cocaine shortly before the shooting. However, the State presented two witnesses who were present at the party in the motel room. Both witnesses claimed that there were no drugs or alcohol at the party. In addition, witnesses to the shooting testified that the defendant appeared calm and "normal" at the time of the shooting. As such, the evidence indicating that the defendant was not under the influence of an intoxicant at the time of the shooting was clearly sufficient for the jury to determine the issues accordingly. As it is within the province of the jury to determine the credibility of witnesses, it was proper for the jury to disregard the defendant's testimony that drug ingestion negated his culpable mental state. See State v. Howard, 926 S.W.2d 579, 584 (Tenn. Crim. App. 1996), overruled on other grounds by State v. Williams, 977 S.W.2d 101, 106 (Tenn. 1998); see also State v. Roy E. Keough, No. 02C01-9708-CR-00317, Shelby County (Tenn. Crim. App. filed January 13, 1999, at Jackson). As such, this issue is without merit.

In sum, we find the evidence sufficient to establish the elements of

6

premeditation and intent. Further, the defendant's argument that drug ingestion negated the required mens rea is without merit. Accordingly, we affirm the defendant's conviction for first-degree murder.

_____
JOHN H. PEAY, Judge


CONCUR:


_____
DAVID H. WELLES, Judge


_____
J. CURWOOD WITT, JR., Judge