IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 8, 2007

**STATE OF TENNESSEE v. SZUMANSKI STROUD**

**Appeal from the Criminal Court for Shelby County**
**No. 05-06225    Chris Craft, Judge**

**No. W2006-01945-CCA-R3-CD  - Filed October 29, 2007**

The defendant, Szumanski Stroud, appeals from his Shelby County Criminal Court jury trial convictions of two counts of aggravated assault, Class C felonies, for which he received seven-year and six-month sentences, to be served consecutively in the Department of Correction as a Range II offender.  In this appeal, he claims (1) that the evidence is not sufficient to support his convictions, (2) that the trial court erroneously instructed the jury on the definition of "intentionally" and "knowingly" mental states, and (3) that he was excessively sentenced.  We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Robert Wilson Jones, District Public Defender, and Trent Hall (at trial) and Phyllis L. Aluko (on appeal), Assistant Public Defenders, for the appellant, Szumanski Stroud.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Michelle L. Kimbril-Parks, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Randy Smothers testified for the state that his fiancee, Denita Harvey, was the defendant's sister and that he had known the defendant for about three or four years.  He said that on May 26, 2005, at about 3:00 or 4:00 p.m., he was driving Ms. Harvey's car, with her as a passenger.  He said that as he approached a four-way stop, he saw a "newer type" white truck occupied by two men, one of whom had a white towel or cloth tied around his mouth and nose.  He said the truck was on the opposite side of the road coming toward him.  He said he could see the masked person's eyes and recognized him as the defendant.  He said he told the defendant's sister to recline in her seat because

he thought he saw her brother and "ain't no telling what he might do." He said that no words were exchanged between him and the defendant, that "[t]hey proceeded to pull off," and that he made a U-turn and sped away. He said he was afraid the defendant was coming to retaliate against him because of an altercation that had taken place two days earlier. He said that after he sped off, the truck caught up to him. He said that the defendant was in the passenger seat and hung out the window with a gun pointed at the witness. He said that at least four or five shots were fired and that none of them hit the car he was driving. He said he swerved in the street to avoid being shot and sped around the neighborhood in order to get away. He said that he did not recognize the driver and that he did not see the driver with a gun. Smothers said he reported the incident to the police and that he identified the defendant from a photograph lineup on June 8.

Mr. Smothers testified that he and the defendant had an altercation on May 24 because the defendant was upset that Smothers had not given the defendant bail money to get the defendant's younger brother out of jail. He said he had received a series of irate voice mail messages at about 4:00 a.m. from the defendant and that he had returned the call and attempted to discuss the situation with the defendant. After the calls, the defendant came to the home Smothers shared with Ms. Harvey. He said the defendant banged on the door and was admitted by Ms. Harvey. He said the defendant ran inside and hit him in the mouth. He said they "tussled around for a minute" until Smothers stabbed the defendant "about two times." He said the defendant ran outside, took a wooden log from a flower bed, charged into the house, and threw it into the path of Smothers' daughter. He said that he stabbed the defendant another time and that the defendant ran away. He said that during the incident, the defendant said little other than cursing him, although as he left, the defendant said that he would be back. Smothers said he reported the incident to the police. He said he did not have any contact with the defendant between the incident at his house on May 24 and the time he saw the defendant on the road on May 26.

Mr. Smothers testified that he had saved the voice mail messages from the defendant and had let the police listen to them but that they had automatically deleted from his cellular telephone after a few days. He said that he received additional threats by voice mail and had taken his family to stay in a hotel after the May 24 altercation.

Mr. Smothers acknowledged that he had been convicted of burglary of a motor vehicle and theft of property valued at more than $500. He said, however, that he was telling the truth about the defendant's actions.

Denita Harvey testified that Randy Smothers was the father of her two children and that the defendant was her oldest brother. She said she had been asked to give money for her youngest brother's bail but that she refused because she did not have the money. She said that the defendant wanted Mr. Smothers to contribute money but that Smothers refused and the defendant became angry. She said the defendant expressed his anger with Mr. Smothers in a telephone call to her.

She said that Smothers and the defendant got into an altercation on May 24, 2005, at the house in which she and Smothers lived. She said her children were present in the home at the time.

She said that she heard banging on the door and that she opened the door for the defendant. She said that the defendant and Smothers began fighting and that she could not recall what was said. She said that after Smothers stabbed the defendant, the defendant left the house. She said that the defendant was not armed when he arrived but that he had thrown a stick before Smothers stabbed him. She said that she called the defendant immediately afterward to check on his condition, that he was not okay, and that she had heard he required treatment at the hospital. She said the police were called about an hour after the altercation.

Ms. Harvey testified that on May 26, 2005, at about 2:00 or 3:00 p.m., she was a passenger in her 2000 Pontiac Grand Prix, which Smothers was driving. She said she saw a person whom she could not positively identify as the defendant in a white truck. She said that the person had something over the lower part of his face and that she did not recognize the driver. She said Smothers told her to get down and that she got on the floorboard. She said that while she was on the floorboard, shots were fired and the car was twisting around. She said that she did not see someone with a weapon but that she heard gunshots. She said she and Smothers talked to the police that day. Ms. Harvey acknowledged she had told the police on May 26 that the defendant was the person who was responsible. She said, however, that she could not positively identify him and that she had assumed he was responsible because of the altercation.

Officer Daniel Miller of the Memphis Police Department testified that he was working the Bravo shift, which is from 7:00 a.m. until 3:30 p.m, on May 24, 2005. He said he responded to a "fight call" and spoke with Randy Smothers. He said Smothers told him he had gotten into an altercation with the defendant. He said Smothers reported that the altercation was over money that the defendant believed was owed him. He said that Denita Harvey was on the scene, as well and that he spoke with her briefly. He said he was not told that someone had been stabbed.

Officer Tristan Brown of the Memphis Police Department testified that he was working the Delta shift, which is from 5:00 p.m. until 1:00 a.m., on May 26, 2005. He said he responded to an aggravated assault call at 6:35 p.m. that day. He said that Smothers was upset and reported that he had been in an altercation with his "brother" in which his brother came by in a car and shot at him because of an earlier incident. He said Smothers reported that he had stabbed his brother in an earlier incident. He said he also spoke with Denita Harvey, who advised him that the shooter had been the "victim's brother." He said that Smothers and Harvey identified the shooter by name as the defendant. Officer Brown said that he was advised of telephone calls that the defendant had placed and that he listened to some telephone messages but that he could not remember exactly what was said.

The defendant did not offer any proof. The jury found him guilty of two counts of aggravated assault.

# I

The defendant challenges the sufficiency of the convicting evidence. Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This means that we do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

The defendant was convicted of aggravated assault of Randy Smothers and Denita Harvey. As relevant to this appeal, that offense is defined as follows:

> (a)     A person commits aggravated assault who:
>     (1)     Intentionally or knowingly commits an assault as defined in § 39-13-101 and:
> . . .
>         (B)     Uses or displays a deadly weapon[.]

T.C.A. § 39-13-102(a)(1)(B). Assault, as pertinent to this appeal, is committed by one who "[i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury[.]" T.C.A. § 39-13-101(a)(2).

The defendant argues that the state's proof was deficient because neither Randy Smothers nor Denita Harvey testified that they were in fear of imminent bodily injury. This court has held that proof of a victim's fear may be inferred from circumstantial evidence. See, e.g., State v. Larry Allen Whited and William Henry Rutherford, No. M2005-00167-CCA-R3-CD, Sumner County (Tenn. Crim. App. Mar. 7, 2006), app. denied (Tenn. Aug. 28, 2006). In the present case, there was proof that Smothers had taken his family to a hotel after a violent altercation with the defendant in Smothers' and Harvey's home. There was evidence that when Smothers saw the defendant on May 26, he made a U-turn and sped away because he was "afraid that he was coming back for retaliation," that the defendant pointed a gun at Smothers, that the defendant fired four or five shots, and that Smothers "was swerving in the street trying to prevent from getting shot." There was proof that Harvey got on the floorboard of the car and remained there for several minutes during the attack and that she heard the shots and felt the car swerving. In the light most favorable to the state, this proof sufficiently establishes that the victims were in reasonable fear of imminent bodily injury from the defendant's attack.

The defendant also argues that the proof of his identity was insufficient. He claims that both victims were predisposed to believe he was the shooter because of the prior altercation, that the

shooter's face was partially concealed, and that the victims' opportunity to observe the shooter was minimal. He also argues that Harvey was unable to identify him with certainty at trial and that Smothers' testimony was that he told Harvey he "thought" he saw her brother, thereby qualifying his earlier positive identification of the defendant as the shooter. The jury had before it evidence that both Smothers and Harvey identified the defendant to the police at the scene as their attacker, that Smothers identified the defendant as the attacker from a photograph lineup he viewed several days after the crimes, and that Smothers identified the defendant as his attacker at trial. The jury's verdict reflects that it accredited this evidence, as was its province as the trier of fact. This evidence is sufficient to support the defendant's convictions.

## II

The defendant contends that the trial court erred by defining in its jury instructions that "intentionally" and "knowingly" included both "nature of conduct" and "result of conduct." The defendant did not object to the jury instructions at trial or raise the issue in his motion for new trial. However, he urges us to review it as a matter of plain error, although he has failed to make any argument demonstrating that the matter qualifies for plain error review.

The trial court gave the following instruction:

> Any person who commits the offense of Aggravated Assault is guilty of a crime.
>
> For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:
>
> > (1)    that the defendant intentionally or knowingly caused the alleged victim in that particular Count to reasonably fear imminent bodily injury;
> >
> > and
> >
> > (2)    that the defendant used or displayed a deadly weapon.
>
> "Intentionally" means that a person acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result.

"Knowingly" means that a person acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

The requirement of "knowingly" is also established if it is shown that the defendant acted intentionally.

[Definition of "Deadly Weapon" omitted.]

The defendant argues that aggravated assault is a result of conduct crime and that the trial court erroneously included the nature of conduct language. The state argues that the instruction was not erroneous because the elements of aggravated assault include both a nature of conduct element, intentional or knowing use or display of a deadly weapon, and a result of conduct element, causing a victim to have reasonable fear of imminent bodily injury. See generally State v. Howard, 926 S.W.2d 579, 586 (Tenn. Crim. App. 1996) ("When an offense has different mens rea for separate elements, the trial court must set forth the mental state for each element clearly so that the jury can determine whether the state has met its burden of proof."), overruled on other grounds by State v. Williams, 977 S.W.2d 101 (Tenn. 1998).

Both parties argue that their respective positions are supported by an unreported decision of this court, State v. Michael P. Healy, No. W1999-01510-CCA-R3-CD, Shelby County (Tenn. Crim. App. June 26, 2001), a case which involved a claim of failure to instruct on lesser included offenses of aggravated assault. In analyzing whether reckless endangerment is a lesser included offense of aggravated assault, the court in Michael P. Healy said that aggravated assault "'has a result-of-conduct aspect in that it focuses on the victim being placed in fear of imminent bodily injury[.]'" Id., slip op. at 4 (quoting State v. Ralph Dewayne Moore, No. E1999-02743-CCA-R3-CD, Roane County (Tenn. Crim. App. Oct. 30, 2001) (Tipton, J., dissenting), rev'd on other grounds, 77 S.W.3d 132 (Tenn. 2001)). The defendant argues that Healy is authority for his argument that only the "result of conduct" definition was appropriate, while the state argues that Healy's statement that aggravated assault has a "result of conduct" element means by inference that the crime has a "nature of conduct" element, as well. Upon consideration, we accept Healy for the proposition that the victim being placed in fear of imminent bodily injury is a "result of conduct" element and decline to draw any inference from that case regarding modes of conduct of other aspects of the offense.

Thus, we consider the state's argument that intentionally or knowingly using or displaying a deadly weapon is a "nature of conduct" element. In doing so, we are guided by our supreme court's decision in State v. Ducker, 27 S.W.3d 889 (Tenn. 2000). In that case, the court said

A result-of-conduct offense requires that the culpable mental state accompany the result as opposed to the nature of the conduct.

See generally Wallace v. State, 763 S.W.2d 628 (Tex. Ct. App. 1989). The focus is on whether the actor possessed the required culpability to effectuate the result that the legislature has specified. Generally, an offense may be classified as a result-of-conduct offense when the result of the conduct is the only element contained in the offense.

An example of a result-of-conduct offense is second degree murder, which is defined as a "knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1). In second degree murder, the result of the conduct is the sole element of the offense. The "nature of the conduct" that causes death or the manner in which one is killed is inconsequential under the second degree murder statute. The statute focuses purely on the result and punishes an actor who knowingly causes another's death. The intent to engage in conduct is not an explicit element of the state's case in second degree murder. Accordingly, a result-of-conduct crime does not require as an element that an actor engage in a specified course of conduct to accomplish the specified result.

Ducker, 27 S.W.3d at 896. With these principles in mind, we hold that the element of intentionally or knowingly using or displaying a deadly weapon focuses on the nature of conduct because that element focuses on the defendant's conduct of using or displaying a weapon, rather than the result from that conduct. We therefore reject the defendant's claim of instructional error in the inclusion of "nature of conduct" language.

### III

The defendant argues that he received excessive sentences of seven years and six months for each of his convictions and that the trial court erroneously imposed consecutive sentencing, yielding an effective fifteen-year sentence. The trial court determined that the defendant was a Range II offender.

When a defendant appeals the length or manner of service of a sentence imposed by the trial court, this court conducts a de novo review of the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d).[1] However, the presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn.

---

[1] We note that on June 7, 2005, the General Assembly amended Tennessee Code Annotated sections 40-35-102(6), -114, -210, -401. See 2005 Tenn. Pub. Acts ch. 353, §§ 1, 5, 6, 8. However, the amended code sections are inapplicable to the defendant's appeal. The defendant was sentenced after the change in the sentencing laws took effect, but the record does not reflect that the defendant signed a waiver of his ex post facto protections to be sentenced under the amended provisions. See T.C.A. § 40-35-210, Compiler's Notes.

1991). The burden is on the appealing party to show that the sentence is improper. T.C.A. § 40-35-401(d), Sent'g Comm'n Cmts. This means if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168.

As a Range II offender, the defendant faced a sentence of six to ten years for each of his Class C felonies. T.C.A. § 40-35-112(b)(3). The trial court found on the basis of certified copies of judgments of the defendant's prior convictions that the defendant had sufficient prior convictions to qualify him as a Range II offender, and it noted as well from the presentence report that he had an additional, extensive history of criminal behavior, which the court found should enhance the defendant's sentences. See T.C.A. § 40-35-114(2) (2003) (providing for enhancement of sentence based upon finding of "previous criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range"). The court stated that the defendant was "oblivious" to the law and "just does what he wants, drives when he wants, drugs when he wants, assault[s] people when he wants." The defendant does not contest the findings relative to his criminal history on appeal. Rather, he argues that the trial court erred in declining to apply mitigating weight to the fact that he committed the shooting under strong provocation by the victim from the previous altercation in which the defendant was stabbed. See T.C.A. § 40-35-113(2). However, the defendant's argument fails to account for the fact that the shooting was two days after the stabbing, that the stabbing occurred when the defendant attacked the victim in the victim's home, that the victim was fleeing when the defendant fired shots at him, and that his actions were more fairly characterized as retaliation, rather than action under strong provocation. The trial court did not err in declining to apply mitigating weight for this factor.

The trial court found on the basis of the prior criminal history enhancement factor that the appropriate sentence for the individual convictions was ten years each. However, the court later reduced the sentences to seven years and six months each based upon its finding that consecutive sentences were warranted but that an effective twenty-year sentence did not reasonably relate to the severity of the offense. Upon de novo review, we hold that the defendant has not demonstrated that these determinations were improper.

Further, we note that the trial court acknowledged that it was required to consider probation because the defendant's individual sentences were eight years or less. See T.C.A. § 40-35-303(a) (2003) (amended 2005). The court found that the defendant's criminal history and character

-8-

reflected extremely poorly on his prospects for rehabilitation and denied probation. The record supports this determination.

The defendant also claims that the trial court erred in imposing consecutive sentences. Consecutive sentencing is guided by Tennessee Code Annotated section 40-35-115(b), which states in pertinent part that the court may order sentences to run consecutively if it finds by a preponderance of the evidence that the defendant is an "offender whose record of criminal activity is extensive" or a "dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." T.C.A. § 40-35-115(b)(2), (4). For dangerous offenders, "consecutive sentences cannot be imposed unless the terms reasonably relate to the severity of the offenses committed and are necessary in order to protect the public from further serious criminal conduct by the defendant." State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995); see State v. Lane, 3 S.W.3d 456, 461 (Tenn. 1999). Rule 32(c)(1) of the Tennessee Rules of Criminal Procedure requires that the trial court "specifically recite the reasons" behind its imposition of a consecutive sentence. See State v. Donnie Thompson, No. M2002-01499-CCA-R3-CD, Maury County, slip op. at 5 (Tenn. Crim. App. Mar. 3, 2003) (reversing the trial court's imposition of consecutive sentencing because it failed to make a finding under Tennessee Code Annotated section 40-35-115(b) and the record did not support a conclusion that the defendant met the consecutive sentencing prerequisites).

The court found that the defendant was an offender with an extensive record of criminal activity and that he was a dangerous offender whose behavior indicated little or no regard for human life and no hesitation to commit a crime when the risk to human life was high. See T.C.A. § 40-35-115(b)(2), (4). With respect to the latter finding, the court noted that the defendant opened fire on the streets of a populous city. The court also found that the circumstances of the offense were aggravated and that extended confinement was "necessary to protect society from [the defendant's] unwillingness to lead a productive life and his resort to criminal activity in furtherance of an antisocietal lifestyle." The court found, however, that given that no one was injured in the crimes, a twenty-year effective sentence did not reasonably relate to severity of the offense. Thus, the court reduced the ten-year sentences to seven years and six months each and imposed them consecutively, for an effective fifteen-year sentence. These findings are supported by the record, and we may not disturb the trial court's sentencing. The defendant has failed to demonstrate error.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE