# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### October 17, 2000 Session

## STATE OF TENNESSEE v. JOEY L. SALCIDO

**Direct Appeal from the Circuit Court for Giles County**
**No. 8381     Jim T. Hamilton, Judge**

---

**No. M1999-00501-CCA-R3-CD - Filed March 8, 2001**

---

Defendant Joey L. Salcido was indicted by the Giles County Grand Jury for three counts of incest and three counts of rape of a child. Following a jury trial, Defendant was convicted of three counts of aggravated sexual battery as a lesser-included offense of child rape and acquitted of the charges of incest. On March 15, 1999, the trial court sentenced Defendant as a violent 100% offender to a term of twelve years for each of his three convictions and ordered that all sentences be served consecutively. On April 15, 1999, thirty-one days after Defendant's judgment was entered, Defendant filed an untimely motion for new trial. The motion was nevertheless heard on April 19, 1999 and denied on April 20, 1999. On April 23, 1999, Defendant filed a notice of appeal which was also untimely due to the late filing of Defendant's motion for new trial. On May 25, 2000, Defendant filed a motion to waive the timely filing of his notice to appeal and on June 7, 2000, this Court granted Defendant's motion. In this appeal Defendant raises the following issues: (1) whether the Defendant's conviction of aggravated sexual battery, an offense which was neither charged in the indictment nor a lesser-included offense of the offenses charged, was error; (2) whether, assuming aggravated sexual battery is determined to be a lesser-included offense of child rape, the trial court erred in its jury instruction regarding the mental state necessary to convict him; (3) whether the trial court erred when it admitted certain evidence over Defendant's objections; (4) whether the cumulative effect of the trial court's errors renders the trial fundamentally unfair so as to offend Defendant's due process guarantees; and (5) whether the trial court erred when it imposed consecutive sentences. Defendant asserts that his first issue concerns subject matter jurisdiction and, therefore, must be heard by this Court pursuant to Tenn. R. App. P. 13(b). Defendant also urges this Court to exercise its discretion under Tenn. R. Crim. P. 52(b) or Tenn. R. App. P. 13(b) and consider the remaining four issues. After a thorough review of the record and applicable law, we find no errors requiring reversal and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

John E. Herbison, Nashville, Tennessee (on appeal) and Claudia Jack, District Public Defender; and Robert H. Stovall, Jr., Assistant Public Defender, (at trial) for the appellant, Joey L. Salcido.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Mike Bottoms, District Attorney General; Richard Dunavant, Assistant District Attorney; and Robert C. Sanders, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Facts**

Defendant was charged with committing sexual offenses against his daughter, B.S., during the months of October and November 1996. (The victim will be referred to herein by her initials.) Tracy Salcido, the ex-wife of Defendant and mother of B.S., testified that she and Defendant had separated but were still married when the alleged incidents of sexual abuse occurred. In the fall of 1996, B.S. was six years old and spent nearly every weekend with her father. Tracy testified that, on a typical weekend, B.S. would stay with Defendant from Friday evening until Monday morning when she left for school. As a rule, B.S. arrived home "fine and happy" after weekends with her father. Tracy noticed nothing strange or unusual in B.S.'s behavior during the time of the alleged abuse and had no personal knowledge that Defendant engaged in any deviant conduct with B.S. On only one occasion did B.S. ask to go home early from a weekend visit with Defendant. Defendant had been drinking too much that day, and Tracy believed that this was the reason B.S. made the request. Tracy did not take B.S. away from Defendant on this occasion, however, and later, she arrived at home appearing normal, happy, and cheerful.

Tracy testified that after she and Defendant separated, Defendant's cousin, Monica Dollar, and her family (Monica's husband and four sons) moved into Defendant's double-wide trailer and lived with him. B.S. and Monica developed a close relationship, and B.S. enjoyed playing with the four boys during her visits with Defendant.

On November 12, 1996, B.S. informed Tracy that something had occurred between B.S. and Defendant. Tracy did not testify as to the specifics of her child's allegations, stating only that B.S.'s complaint was of a sexual nature and that it involved Defendant. As a result of B.S.'s complaint, Tracy filed a report with the Department of Children's Services and started divorce proceedings to protect her daughter. Divorce papers were delivered to Defendant at work on the day before Thanksgiving. Defendant found Tracy later that day; he was very angry and wanted to know why she had filed for divorce. Tracy had promised Defendant that she would talk with him before she took any steps toward divorce. Tracy replied that she made her promise to Defendant "before [he] did what [he] did to B.S." At this, Defendant dropped to his knees, grabbed his head, and started crying, "Oh my God. What have I done? What have I done?"

On cross-examination, Tracy testified that Defendant's drinking problem was one of the reasons she left him. Defendant became easily agitated when drinking, and he would say and do

things that were unusual for him when he was sober. Tracy testified that when Defendant drank "he grew horns." B.S. had also expressed concern regarding Defendant's drinking and told Tracy that she wanted him to get help. During redirect examination, the prosecutor asked Tracy whether Defendant ever physically abused her during the course of their marriage. Tracy answered, "Yes, he did."

B.S., Defendant's daughter, was nine years old at the time of the trial. B.S. testified that she recalled spending weekends with Defendant when she was six. For instance, B.S. recalled that one evening when she was too tired to finish watching the Lion King movie, she went to bed. Afterward, Defendant came to bed, took off both of their clothes, then "got on top of [her] and went up and down." B.S. testified that she told her mother about this incident and that similar things had occurred on the two preceding weekend visits. On the previous occasions, B.S. was asleep but woke up when Defendant began to undress her. Defendant was usually naked by then. B.S. testified that after Defendant got on top of her, he put his "private" part, or "pee-pee," on her "pee-pee." B.S. claimed that Defendant put his private part "a little in" and that this hurt her. B.S. would sometimes cry and holler for help, but nobody came. B.S. also asked Defendant to stop, but he would not. B.S. testified that Defendant treated her this way a total of fourteen times, but she was too frightened to tell anyone. B.S. finally confided in her mother because she wanted her mother to find help for her father.

Michael Chapman, a criminal investigator for the Giles County Sheriff's Department, testified that he investigated the allegations against Defendant in November 1996. Chapman investigated all of the child abuse cases and had done so for a number of years. In Defendant's case, Chapman spoke first with B.S. in the company of Ms. Pierce, a member of the Department of Children's Services. Thereafter, during the months of January and March 1997, Chapman spoke with Defendant three times concerning the allegations against him. Defendant claimed to have no memory of doing the things Chapman said he was accused of and, since he could not remember what happened, he could neither deny nor admit that the incidents occurred. Chapman did not interview any of the other persons living in Defendant's trailer during the time of the alleged offenses. Chapman concluded his investigation, then presented the matter to the Grand Jury of Giles County for consideration. At this time, the police discovered that Defendant had quit his job and left the state. Three months later, Defendant was apprehended in Florida.

Julie Roseoff Williams testified that she worked as a nurse practitioner for "Our Kids Center" in Nashville, Tennessee. One of the Center's jobs was to perform medical evaluations on children who were suspected victims of sexual abuse. The state used the medical reports in the prosecution of offenders. In November 1996, Williams examined B.S. but discovered nothing abnormal. No physical signs of penetration such as redness, swelling, or bruising/tearing of the hymen were evident. Williams testified that these findings did not negate or support the possibility that penetration occurred, however, because too much time had passed (thirteen days) since the last incident of abuse. Williams also testified that, according to a report prepared by one of the social workers at the Center, B.S. exhibited none of the typical emotional or psychological "flags" which indicated child abuse, but not all children exhibit behavioral signs. In sum, B.S.'s examination

revealed no physical, psychological or emotional evidence of abuse. The State rested its case-in-chief at the conclusion of Ms. Williams' testimony.

Shinar Hurd, a case manager for the Department of Children's Services, was the first witness called on behalf of Defendant. Hurd testified that on November 13, 1996, she met with B.S. and Tracy, her mother, to begin an investigation into Tracy's allegations of abuse against Defendant. The interview with B.S. was taped, and a transcript was prepared which Hurd brought with her to court. When Hurd initially asked B.S. about sexual incidents she had experienced with her father, B.S. indicated only one but could not tell her when it happened. Later in the interview, B.S. indicated that multiple abuses occurred on several occasions.

During the trial, the State requested permission to introduce the entire transcript of Hurd's interview with B.S. into evidence. The trial court granted the State's request over Defendant's objections. The transcript was read to the jury and revealed, in relevant part, a discussion between Hurd and B.S. concerning B.S.'s understanding of the difference between "good" and "bad" touches, e.g., that "bad touches" occur when a person touches another person's private parts. B.S. disclosed that she had experienced "bad touches" at her father's house. B.S. told Hurd that "when [Defendant] was drunk ... he touched me in my private parts." B.S. further informed Hurd that Defendant would take off all his clothes and start "humping" her. Defendant put his "pee-pee" in hers a "bunch of times" and refused to stop even when she cried. B.S. told Hurd that she felt "hardness" and that his "pee-pee" was "long."

Monica Dollar, Defendant's cousin, testified that she had a close relationship with both Defendant and B.S. Ms. Dollar and her family lived with Defendant in his trailer during the autumn months of 1996 when the alleged sexual abuse of B.S. took place. Ms. Dollar testified that Defendant slept on the couch every night and that she had never discovered Defendant in bed with B.S. Ms. Dollar claimed that she would have heard shouts or calls for help if they had occurred. Instead, B.S. always seemed to be a happy child, never hurt or upset in any way. Ms. Dollar testified that Defendant liked to drink a lot of beer and that, sometimes, he would do or say things while drinking that he would not remember the next day.

John Dollar, the husband of Defendant's cousin, testified that he and his family had resided in Defendant's trailer during the time that the alleged sexual incidents occurred. Dollar testified that B.S. would sleep in Defendant's bedroom on the weekends she came to visit but that Defendant always slept on the couch, whether or not B.S. was there. Dollar further testified that he had never discovered Defendant in the same bedroom with B.S. or heard B.S. crying for help. If B.S. had screamed, Dollar would have heard her because the trailer walls were quite thin. Further, Dollar never noticed that B.S. appeared to walk funny or be upset or hurt at any time during her visits.

## II. Untimely Motion for New Trial

As a preliminary matter, we observe that most of the issues presented in this appeal have been waived by the untimely filing of Defendant's motion for new trial.

In Tennessee, a motion for new trial must be filed "within thirty days of the date the order of sentence is entered." Tenn. R. Crim. P. 33(b). This is a mandatory filing period which cannot be extended. Tenn. R. Crim. P. 45(b). The trial court does not possess jurisdiction over an untimely filed motion for new trial. State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997) (citations omitted). And, "[t]he trial judge's erroneous consideration [and] ruling on a motion for new trial not timely filed ... does not validate the motion." Id. (citing State v. Dodson, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989)). An untimely filed motion for new trial "not only results in the appellant losing the right to have a hearing on the motion, but it also deprives the appellant of the opportunity to argue on appeal any issues that were or should have been presented in the motion for new trial." Id. (citations omitted).

On appeal, waiver of issues not presented in a timely motion for new trial occurs pursuant to Tenn. R. App. P. 3(e), which states:

> [I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties, or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for new trial; otherwise such issues will be treated as waived.

Counsel's untimely filing of a motion for new trial is imputed to the appellant for the purpose of waiver. See Dodson, 780 S.W.2d at 780; State v. Williams, 675 S.W.2d 499, 501 (Tenn. Crim. App. 1984).

The failure to timely file a motion for new trial does not necessarily deprive this Court of jurisdiction, however. Dodson, 780 S.W.2d at 780. Instead, our jurisdiction attaches with the timely filing of a notice of appeal. Tenn. Code Ann. § 40-35-401 (1997). A notice of appeal is required to be filed with the clerk of the trial court within thirty days after the entry of the judgment or order from which relief is sought. Tenn. R. app. P. 4(a); State v. Hamlin, 655 S.W.2d 200 (Tenn. Crim. App. 1983). The time for filing a notice of appeal is tolled by the timely filing of a post-trial motion for judgment of acquittal, new trial, or arrest of judgment. Tenn. R. App. P. 4(c). In the event that the time for filing is not tolled and an untimely notice of appeal results, this Court may nevertheless waive the timely filing of the notice of appeal and address issues which would result in outright dismissal of the prosecution against the accused. See Dodson, 780 S.W.2d at 780; Williams, 675 S.W.2d at 501. In addition, this court may review the record for plain errors when necessary to do substantial justice. Tenn. R. Crim. P. 52(b).

In the instant case, the trial court entered Defendant's judgment order setting forth his sentences on March 15, 1999. Thereafter, Defendant filed an untimely motion for new trial on April 15, 1999, more than 30 days after his judgment was entered. Since Defendant failed to timely file his motion for new trial, the time for filing the notice of appeal was not tolled pursuant to Tenn. R.

App. P. 4(c). Hence, Defendant's notice of appeal filed April 23, 1999 was not timely. There are two remedies available for correcting this procedural fault. An appellant may seek post-conviction relief pursuant to Tenn. Code Ann. § 40-30-202, and/or file a motion in this Court requesting that the timely filing of a notice of appeal be waived in the interest of justice. Tenn. Code Ann. § 27-1-123 (2000); Tenn. R. App. P. 4(a). The record reveals that Defendant filed a motion to waive timely filing of his notice of appeal on May 25, 2000 and this Court granted Defendant's motion. We note that Defendant's issue that he was convicted of an offense not charged in the indictment is one which, if meritorious, would result in a reversal and dismissal of the charges. Therefore, it is not required to be included in a timely filed motion for new trial to be considered on appeal. See State v. Keel, 882 S.W.2d 410, 416 (Tenn. Crim. App. 1994) (citations omitted). Nor is the sentencing issue raised by Defendant required to be raised in a motion for new trial in order to be reviewed on appeal. See State v. Patterson, 966 S.W.2d 435, 440 (Tenn. Crim. App. 1997); Tenn. R. App. P. 3(e). Therefore, we will review the merits of the issues concerning conviction for an offense not charged in the indictment and sentencing as presented by Defendant. However, the remainder of Defendant's issues which, if meritorious, would result in the granting of a new trial and not dismissal of the prosecution will be waived unless we find that they constitute plain error. Tenn. R. App. P. 3(e); Tenn. R. Crim. P. 52(b); State v. Caughron, 855 S.W.2d 526, 538 (Tenn. 1993).

### III. Indictment

Defendant contends that he is entitled to a reversal of his conviction for aggravated sexual battery because this offense was neither charged in the indictment nor is it a lesser-included offense of rape of a child, the offense charged, according to our supreme court's criteria for lesser-included offenses as set forth in State v. Burns, 6 S.W.3d 453 (Tenn. 1999). We disagree.

The State argues that Defendant was properly convicted of aggravated sexual battery. It asserts that, although Defendant's conviction occurred prior to the supreme court's decision in Burns, aggravated sexual battery was well-recognized as a lesser-included offense of rape of a child at the time of Defendant's arrest and trial. Thus, the State argues, the indictment afforded Defendant sufficient notice of the charges against him, including aggravated sexual battery, and he was not deprived of his due process rights.

Aggravated sexual battery requires unlawful "sexual contact" with a victim less than thirteen (13) years of age. See Tenn. Code Ann. § 39-13-504(4) (1997). Rape of a child requires unlawful "sexual penetration" of a victim less than thirteen (13) years of age. See id. § 39-13-522. "Sexual contact" includes the "intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification"; and, "sexual penetration" means "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." Id. § 39-13-501(6), (7).

The governing standard for determining whether a lesser offense is a lesser-included of another was established in State v. Burns, 6 S.W.3d 453 (Tenn. 1999). First, we hold that Burns applies to Defendant's case. The Burns test has been applied retroactively numerous times. See State v. Stokes, 24 S.W.3d 303 (Tenn. 2000) (Burns applied to determine lesser-included offense in case which was in appellate "pipeline" prior to release of supreme court's Burns opinion); State v. Jumbo Kuri, No. M1999-00638-CCA-R3-CD, 2000 WL 680373 at *5 (Tenn. Crim. App., Nashville, May 25, 2000) no perm. to app. filed (Burns has been applied too many times for its retroactive effect to cases on direct appeal to be seriously questioned). Hence, the status of Defendant's conviction offense as a lesser-included according to pre-Burns standards is not controlling.

Next, we examine whether aggravated sexual battery is a lesser-included offense of rape of a child under Burns. Our standard of review of this mixed question of law and fact is de novo with no presumption of correctness. See Burns, 6 S.W.3d at 461. The Burns test is designed so that meeting the requirements of any one of the three parts is sufficient to find a lesser-included offense. However, we shall confine discussion of this matter to determining whether aggravated sexual battery is a lesser-included offense of rape of a child under part (b). Part (b) of the Burns test requires that the elements of the lesser-included offense be included in the elements of the charged offense, differing only in that the lesser-included offense contains a statutory element or elements establishing (1) a different mental state indicating a lesser kind of culpability; and/or (2) a less serious risk of harm to the person, property or public interest. Id. at 466-67.

At the outset, we note that the elements of the lesser-included offense, aggravated sexual battery, are nearly identical to the elements of the charged offense, rape of a child. Aggravated sexual battery requires unlawful "sexual contact" with a victim less than thirteen (13) years of age. Rape of a child requires unlawful "sexual penetration" of a victim less than thirteen (13) years of age. The sole difference between the two offenses lies in the accused's contact with the victim: "sexual contact" versus "sexual penetration." Defendant argues that the definition for "sexual contact," i.e., *intentional* touching for the purpose of sexual arousal or gratification, constitutes an element of aggravated sexual battery establishing both (1) a mental state indicating a greater, not lesser, culpability and (2) a greater risk of harm under part (b) of the Burns test and, further, that this precludes this Court from finding that aggravated sexual battery is a lesser-included offense of rape of a child.

Unpersuaded by Defendant's argument, we continue to believe as we did in State v. Gary J. Greer that "implicit in the Burns decision is the conclusion that the intent to touch a victim's intimate parts for the purpose of sexual arousal constitutes a mental state reflecting a lesser degree of culpability than the reckless, knowing, or intentional commission of sexual penetration for any reason." State v. Gary J. Greer, No. M1998-00789-CCA-R3-CD, 2000 WL 284180 at *7, Davidson County (Tenn. Crim. App., Nashville, March 17, 2000), perm. to app. pending. Aggravated sexual battery is, therefore, a lesser-included offense of rape of a child under part (b) of the Burns test. See State v. Douglas Bryan Boruff, No. E1999-00274-CCA-R3-CD, 2000 WL 284186 at *4, Blount County (Tenn. Crim. App., Knoxville, March 17, 2000), perm to app. pending ("[a]ggravated sexual

battery is clearly a lesser-included offense of child rape"). Further, we find that Defendant's indictment for rape of a child was constitutionally sufficient because it supplied Defendant with notice of the charges which he must defend and adequate basis for entry of a proper judgment of conviction. Defendant is not entitled to relief on this issue.

### IV. Plain Error

We now consider Defendant's issues concerning the trial court's jury instruction and its admission of evidence which Defendant claims constitute plain error under Tennessee Rule of Criminal Procedure 52(b). Rule 52(b) recognizes "plain error" and provides that "[a]n error which has affected the substantial rights of an accused may be noticed at any time, even though not raised in the motion for a new trial or assigned as error on appeal, in the discretion of the appellate court where necessary to do substantial justice." Tenn. R. Crim. P. 52(b); see also Tenn. R.App. P. 13(b). In State v. Adkisson, 899 S .W.2d 626 (Tenn. Crim. App. 1994), our court set forth the following factors to consider when determining whether an error constitutes "plain error":

> (a) the record must clearly establish what occurred in the trial court;
> (b) a clear and unequivocal rule of law must have been breached;
> (c) a substantial right of the accused must have been adversely affected;
> (d) the accused did not waive the issue for tactical reasons; and
> (e) consideration of the error is "necessary to do substantial justice."

Id. at 641-42. Clearly, before an error may be recognized pursuant to Rule 52(b), Tenn.R.Crim.P., the error must be "plain" and it must affect a "substantial right" of the accused. These terms are not self-defining. Id. at 639. The Adkisson court continued:

> The word "plain" "is synonymous with 'clear' or, equivalently 'obvious'." A "substantial right" is a right of "fundamental proportions in the indictment process, a right to the proof of every element of the offense, and is constitutional in nature." In short, a plain error is not just an error that is conspicuous. Rather, it is an especially egregious error that strikes at "the fairness, integrity or public reputation of judicial proceedings."

Id. Rule 52(b), Tenn.R.Crim.P., makes it clear that the plain error rule is not a commonplace remedy. The intention of the rule is to serve the ends of justice. Therefore, it is invoked "only in exceptional circumstances [where necessary] to avoid a miscarriage of justice." Id. (quoting United States v. Gerald, 624 F.2d 1291, 1299 (5th Cir. 1980)). Appellate courts are advised to use it sparingly in recognizing errors that have not been raised by the parties or have been waived due to a procedural default. Id.

"Because the Adkisson test provides a clear and meaningful standard for considering whether a trial error rises to the level of plain error in the absence of an objection," the Tennessee Supreme

Court formally adopted this test when reviewing a record for plain error. State v. Smith, 24 S.W.3d 274, 282-83 (Tenn. 2000). In doing so, it re-emphasized that the presence of all five factors must be established by the record before the existence of plain error can be recognized and that complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established. Id. The supreme court further stated that the "'plain error' must [have been] of such a great magnitude that it probably changed the outcome of the trial." Id. (citing Adkisson, 899 S.W.2d at 642).

## A. Jury Instruction

Defendant contends that the trial court erred in its jury instruction regarding the mental state necessary to convict him for the crime of aggravated sexual battery. Defendant argues that the jury instructions stated that, in order to convict him, it was only necessary for the jury to find that Defendant acted either intentionally, knowingly, or recklessly when, in fact, it was imperative for the jury to find that Defendant acted intentionally with respect to his sexual contact with the victim. Defendant submits that this error is fundamental, plain, and so prejudicial that justice demands he receive a new trial.

Under the United States and Tennessee Constitutions, a defendant has a constitutional right to trial by jury. U.S. Const. amend. VI; Tenn. Const. Art. I, § 6. In Tennessee, the right to trial by jury is the right guaranteed to every litigant in jury cases to have the facts involved tried and determined by twelve jurors. State v. Bobo, 814 S.W.2d 353, 356 (Tenn. 1991) (citing Willard v. State, 130 S.W.2d 99 (1939)). It follows that the defendant has a right to have "every issue of fact raised by the evidence and material to his defense submitted to the jury upon proper instructions by the judge." State v. Brown, 836 S.W.2d 530, 553 (Tenn.1992) (citations omitted).

In the instant case, the trial court's initial instructions to the jury were as follows:

> For you to find the defendant guilty of this offense, the State must have proven, beyond a reasonable doubt, the existence of the following essential elements. One, the defendant had unlawful sexual contact with the alleged victim, in which the defendant intentionally touched the alleged victim's intimate parts or the clothing covering the immediate area of the alleged victim's intimate parts. And two, that the alleged victim was less than 13 years of age. And three, that the defendant acted either intentionally, knowingly, or recklessly.

Defendant argues that these instructions confused the jury, as shown by the fact that the jury initially returned with a verdict for a crime which does not exist: reckless sexual battery. However, the trial court had the following discussion with the jury after it received the improper verdict:

> THE COURT: You say that you find the defendant guilty of reckless sexual battery, innocent of rape and incest. When you say reckless sexual battery, do you mean aggravated sexual battery? One of the

other alternatives that you had? You had rape of a child, incest, and aggravated sexual battery.

THE JURORS: [No response.]

THE COURT: That was the only three choices that you had. Do you need to go back and talk some more?

THE JURORS: [No response.]

THE COURT: You didn't have reckless–well, there is no such charge as reckless sexual battery. You have aggravated sexual battery in this case.

A JUROR: We read it in there.

A JUROR: Under aggravated, there was intentionally, knowingly, and recklessly.

THE FORELADY: We considered intentionally and then we considered knowingly.

A JUROR: Then we settled with reckless.

THE COURT: Those are definitions that have to be used in defining that charge. That's not a charge, reckless sexual battery. Aggravated sexual battery is the charge.

A JUROR: Do you want to go back and talk?

A JUROR: No. I don't.

A JUROR: Yes. I think we do need to go back and talk.

THE COURT: Yeah, I think you do. Take a look at that charge when you get back there.

After the jury was sent back for further deliberation, it returned nine minutes later with a verdict which found Defendant guilty of three counts of aggravated sexual battery and not guilty of rape of a child and incest.

In State v. Howard, this Court addressed a very similar issue regarding jury instructions. The trial court had provided incorrect instructions on the elements of aggravated sexual battery and sexual battery. Although the defendant did not raise the issue at trial or on appeal, we decided to

-10-

address the issue in view of the remand (based on ground that trial court's failure to instruct on a lesser-included offense deprived defendant of right to trial by jury). State v. Howard, 926 S.W.2d 579, 587 (Tenn. Crim. App. 1996) (overruled on other grounds in State v. Williams, 977 S.W.2d 101 (Tenn. 1998)).

At the conclusion of the proof at the trial in Howard, the trial court instructed the jury that aggravated sexual battery included the following elements: (1) the defendant had unlawful sexual contact with the alleged victim or the alleged victim had unlawful sexual contact with the defendant; (2) the alleged victim was less than thirteen (13) years of age; and (3) the defendant acted *intentionally, knowingly or recklessly.* Id. (emphasis added). This was an important issue because this Court had previously held that the various elements of aggravated sexual battery contained different culpable mental states within the same offense. See id. (citing State v. Parker, 887 S.W.2d 825, 827 (Tenn. Crim. App. 1994)). More specifically, we had noted that our statutes plainly provided that "sexual contact" required "intentional touching" of the victim's intimate parts or clothing for the purposes of "sexual arousal or gratification." Tenn. Code Ann. §§ 39-13-501(6), (504) (1997). The definition of aggravated sexual battery, however, was silent regarding the culpable mental state as to the victim's age. Thus, we determined that under Tenn. Code Ann. § 39-11-301(c), mere reckless conduct applied (as well as intentional or knowing) to the element regarding age. Tenn. Code Ann. § 39-11-301(c) (1997); Howard, 926 S.W.2d at 587. We held that when an offense has different mens rea for separate elements, the trial court has a duty to set forth the mental state for each element clearly so that the jury can determine whether the state has met its burden of proof. Howard, 926 S.W.2d at 587.

Similarly to Howard, the trial court in the instant case may arguably have erred when it gave the jury unclear instructions. Next, we must determine whether the error, if any, rose to the level of plain error according to the factors set forth in Smith. Recognition of an error does not result in automatic reversal of a trial court's judgment since the error may be harmless. Adkisson, 899 S.W.2d at 626. After careful review of the record, we find that any error in Defendant's jury instructions did not adversely affect a substantial right of Defendant and, therefore, did not rise to the level of plain error under Tenn. R. Crim. P. 52(b).

First, we observe that the jury instruction given in Howard is distinguishable from the charge given in Defendant's case. From the quoted language above, we observe that part (1) of the instruction concerning "sexual contact" in Howard omitted *any* mention of the requisite mens rea. The trial court in Howard did not give an instruction on the culpable mental state until part (3), which could be logically construed, then, to pertain to the entire instruction which preceded it. By contrast, the instruction given in Defendant's case (regarding "sexual contact") required the jury to find that "the defendant had unlawful sexual contact with the alleged victim, in which the defendant *intentionally* touched the alleged victim's intimate parts ...." In the latter case, the word "intentional" clearly attached to the finding of "sexual contact." Granted, there is an indication that the jury in Defendant's case may have been confused. However, the trial judge had the opportunity to clear up any confusion prior to the verdict. Aware that reckless sexual battery was "not a charge," the jury then retired to deliberate further and returned a verdict of guilty for aggravated sexual battery.

We are guided by the decision of our supreme court in State v. Garrison, _____ S.W.3d _____ (Tenn. 2000). In Garrison, the trial court had omitted certain statutory language in its instructions to the jury. On appeal, this Court found that the jury charge omitted an essential element of the offense, reversed the conviction, and granted the defendant a new trial. The Tennessee Supreme Court reversed. While the supreme court agreed that the defendant's rights were violated, it considered the erroneous instruction to be harmless error.

Although the jury instruction issue before the supreme court concerned an omission rather than an incorrect instruction, we believe the remarks made by the supreme court are helpful in evaluating the significance of the error before us. The supreme court remarked that a very limited class of errors have been found to be "structural," hence subject to automatic reversal. Garrison, _____ S.W.3d at _____. Relying on Neder v. United States, the Garrison court found the following language persuasive:

> [A] jury instruction that omits an element of the offense ... differs markedly from the constitutional violations we have found to defy harmless-error review. Those cases, we have explained, contain a "*defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.*" Such errors affect the entire process and necessarily render a trial fundamentally unfair. Put another way, *these errors deprive defendants of "basic protections" without which "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence ... and no criminal punishment may be regarded as fundamentally fair....*

Id. at ___ (quoting Neder v. United States, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)) (emphasis added). Concluding its analysis, the supreme court determined that "the integrity of the jury as a fact-finding body was not disturbed" but, rather, an impartial jury was required to make its findings pursuant to imperfect instructions by the trial court. Id. at ___.

In Defendant's case, we similarly find that the jury instruction error, if any, had no impact on the integrity of the final verdict. When faced with the fact that "reckless sexual battery" was not a convictable offense, Defendant's jury reviewed the instructions and decided that the evidence was sufficient to establish guilt beyond a reasonable doubt for the crime of aggravated sexual battery. The instructions given to Defendant's jury included "intentional" in the definition which pertained to the element of sexual contact. We believe that Defendant was not deprived of "basic protections" without which "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . ." Id. at ___. Defendant is not entitled to relief on this issue.

### B. Admissibility of Evidence

Defendant contends that the trial court erred when it admitted certain evidence over Defendant's objections. Specifically, Defendant alleges that the trial court committed prejudicial and reversible error when it permitted the mother of the victim (Defendant's ex-wife) to testify

regarding prior bad acts committed by Defendant and, again, when it allowed a prior statement by the victim to be read into evidence at trial.

Admissibility, relevance and competency of expert testimony are matters that largely rest within the discretion of the trial court.  See State v. Ballard, 855 S.W.2d 557, 562 (Tenn. 1993).  The admission or exclusion of evidence at trial will not be disturbed on appeal unless discretion was arbitrarily exercised or abused.  See State v. Begley, 956 S.W.2d 471, 475 (Tenn. 1997); State v. Gray, 960 S.W.2d 598, 606 (Tenn. Crim. App. 1997) (citing State v. Hayes, 899 S.W.2d 175, 183 (Tenn. Crim. App. 1995); State v. Griffis, 964 S.W.2d 577 (Tenn. Crim. App. 1997).

Defendant's first allegation of error stems from the fact that the trial court permitted Tracy Salcido, Defendant's ex-wife and mother of the victim, to testify regarding prior bad acts committed by Defendant.  Defendant claims that allowing Tracy to testify that Defendant had previously abused her physically during his bouts of drinking constituted plain and prejudicial error.

Tracy was called to testify as a witness for the State.  During the trial, the following testimony was elicited and forms the sole basis for Defendant's complaint regarding this matter:

> DEFENSE (cross-examination): When you left your husband, in the first part of June, was it basically over his drinking?
>
> TRACY: His drinking and how–what a different man he turned into when he dranked [sic].
>
> DEFENSE: And Joey had admitted that he had a drinking problem, had he not?
>
> TRACY: Yes.
>
> DEFENSE: And he was always able to hold down a job, was he not?
>
> TRACY: Yes, he was.
>
> DEFENSE: He always worked 40 hours a week?
>
> TRACY: Yes.
>
> DEFENSE: But Joey, just about every weekend, he would get on a binge, would he?
>
> TRACY: Just whenever the mood suited him.
>
> DEFENSE: And the mood suited him all the time, didn't it?

TRACY: Really, all the time?  Well, he drank a lot.

DEFENSE: And that led to great upset on your part and you ultimately separated in June?

TRACY: Yes, sir.

DEFENSE: And [B.S.] was present when these drinking episodes took place?

TRACY: Yes, sir.

DEFENSE: Almost stoned, falling down on some occasions?

TRACY: Yes, sir.

DEFENSE: [B.S.] didn't like that, did she?

TRACY:  I don't guess so.  I mean [B.S.] and I never talked about it.

\* \* \*

DEFENSE: Did you hear her make the statement to the department social worker that the reason she told this story, she just wanted her dad to get some help for his drinking?

TRACY:  I did not hear that statement.

DEFENSE: Has she ever made the statement, and then say get him help for his drinking problem?

TRACY:  Yeah.  She would ask me if he were sick [sic], and I would say, yes, and she would say, "Yeah.  He needs some help."

\* \* \*

STATE (re-direct examination): All right. [Defense counsel] also asked something about the situation in your marriage and what type of marriage you had, and that sort of thing.  Let me ask you if Joey Salcido, during the course of that marriage, ever physically abused you?

TRACY: Yes, he did.

At this point in the trial, Defendant's counsel objected on the ground that Defendant's relationship with Tracy was not relevant to the charges against him. The jury was removed, and a brief hearing was conducted during which the State argued that its line of questioning was admissible because Defendant's cross-examination had "opened the door" to testimony concerning Defendant's behavior while drinking. The trial judge agreed with the State, observing that Defendant had questioned Tracy concerning "how [Defendant] acted when he got drunk." The trial judge overruled Defendant's objection, after which the jury was readmitted to the courtroom and the following testimony occurred:

> STATE: (re-direct examination continued): Mrs. Tracy, I believe that you said at some point that when Joey Salcido would drink, he would be a different person?
>
> TRACY: Yes, sir.
>
> STATE: If you would, explain to us what you mean by that.
>
> TRACY: He would become easily agitated and out of control. He would say and do things that he normally wouldn't say and do. I always used to tell him that morning after that he grew horns.
>
> * * *
>
> STATE: Okay. And I believe that along about the time that we were taking a break, I had asked you if he had been physically abusive?
>
> TRACY: Yes, sir.
>
> STATE: Is that one of the things that he would do?
>
> TRACY: Yes, sir.
>
> STATE: All right. That's all.

Defendant argues that the above testimony was allowed into evidence in violation of Tenn. R. Evid. 404(b).

Tenn. R. Evid. 404(b) states the following:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:

-15-

> (1) The court upon request must hold a hearing outside the jury's presence;
>
> (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and
>
> (3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b).  Tennessee's rules of evidence recognize that character evidence can be unnecessarily embarrassing, time consuming, given inappropriate weight, and/or mislead the trier of fact to punish the defendant for deeds other that those for which he is on trial. See Tennessee Law of Evidence, § 404.3, Neil P. Cohen (1995). Because of these competing concerns, the rules of evidence struck a compromise with regard to admissibility of character evidence, making it admissible only under certain circumstances.  Id.

For example, Tennessee Rule of Evidence 404(a) provides, in relevant part, that evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity with the character or trait on a particular occasion except, inter alia, when evidence of a pertinent character trait is offered by the accused or by the prosecution to rebut the same.  Tenn. R. Evid. 404(a)(1).  As an illustration, the character of the accused is admissible once the defendant "opens the door" by introducing evidence of his or her own "pertinent" character trait.  See Tennessee Law of Evidence, § 404.3, Neil P. Cohen (1995); State v. West, 844 S.W.2d 144, 149 (Tenn. 1992); State v. Phipps, 883 S.W.2d 138, 152-53 (Tenn. Crim. App. 1994).  Until the defendant takes this step, however, the State cannot introduce evidence of the defendant's bad character to prove that the defendant acted in conformity with that character.  Various methods exist by which the defense can "open the door." Using character witnesses to testify about a particular character trait of the defendant or cross-examining prosecution witnesses on the pertinent subject matter are two examples.

We find no error in the trial judge's decision to admit Tracy's testimony. Defendant's questions concerning whether Defendant had a drinking problem, how he acted when drunk, and whether drinking was the reason Tracy left Defendant, et cetera, all could reasonably be construed to have effectively "opened the door" making character evidence admissible under Rule 404(a). See State v. Phipps, 883 S.W.2d 138, 153 (Tenn. Crim. App. 1994). Moreover, as evidence, Tracy' statements concerning Defendant's drunken misbehavior and bad acts were generally repetitive or cumulative in nature. During Officer Chapman's testimony, transcripts of the interviews between Chapman and Defendant were submitted to the jury wherein Defendant admitted that his wife confronted him with things he had done which "appalled" him and which "he could not believe had taken place." Defendant confessed to have no memory of them, however, because he had been drunk at the time. For the forgoing reasons, we hold that admitting this evidence did not adversely affect a substantial right of Defendant. Accordingly, under Smith we find no plain error.

Defendant alleges that the trial court also erred when it admitted the victim's prior statement into evidence at trial. Defendant claims that, during the direct examination of the Department of Children's Services caseworker, Defendant's counsel placed in issue only a small portion of the victim's statement but, in spite of this, the trial court allowed the entire statement to be read into evidence during trial which constituted plain and prejudicial error.

Defendant's complaint concerns the testimony of Shinar Hurd, the case worker who interviewed B.S. after she complained of being abused by Defendant. The record shows that Hurd's testimony on the subject of her interview of B.S., as elicited by defense counsel, indicated that B.S. had been abused only one time, contradicting B.S.'s prior testimony. During its cross-examination of Hurd, the State inquired further into the contents of the victim's statement and Defendant objected. The trial judge ruled that Defendant had "opened the door" to further testimony concerning the victim's statement. Thus, he allowed the victim's entire sixteen-page statement to Hurd to be read into the record at trial.

Again, after considering the factors set forth in Smith, we find no evidence of plain error. Where specific questions and answers taken out of context do not convey the true picture of the prior statement alleged to be inconsistent, it is unfair to permit reference only to isolated, unexplained responses by the witness and there is no error in allowing the statements to be placed in context. See State v. Boyd, 797 S.W.2d 589, 593 (Tenn. 1990) (citing Cole v. State, 498 S.W.2d 915, 917 (Tenn. Crim. App.1973)). In addition, Defendant's brief does not contain a citation or a quote that indicates what specific language Defendant believes constitutes plain and prejudicial error. Issues not supported by argument or appropriate references to the record will be treated as waived in this Court. Tenn. R. Ct. Crim. App.10(b); Tenn. R. App. R. 27(g). Defendant is not entitled to relief on these issues.

## C. Cumulative Error

Defendant's next issue, whether the cumulative effect of the trial court's errors renders the trial fundamentally unfair so as to offend Defendant's due process guarantees, likewise affords no relief to Defendant. Any and all errors brought to the attention of this Court thus far have been deemed harmless or nonexistent. This claim has no merit.

## V.  Consecutive Sentencing

Defendant argues the trial court erred when it imposed consecutive sentences. Defendant further argues that, because the trial court failed to discuss how the statutory criteria contained in Tenn. Code Ann. § 40-35-115(b)(5) applied to the facts in Defendant's case, this Court's review of the sentence should be de novo without a presumption of correctness.

When an accused challenges the length, range, or the manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (1997). This presumption is "conditioned upon the *affirmative showing in the record* that the trial court

considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991) (emphasis added). Even though the trial court may well have considered the sentencing principles as set forth in § 40-35-103, the record does not contain explicit statements by the trial judge that he did so. For this reason, we review Defendant's sentence de novo without a presumption of correctness.

In conducting a de novo review of a sentence, this court must consider (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, 103, 210 (1997). See State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and made findings of fact that are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

Non-mandatory consecutive sentencing in this case is governed by Tennessee Code Annotated section 40-35-115. According to that statute, the trial court may order consecutive sentencing where a defendant is convicted of more than one criminal offense and the court finds that one or more of the required statutory criteria exist. Tenn. Code Ann. § 40-35-115(a) (1997); State v. Black, 924 S.W.2d 912, 917 (Tenn. Crim. App. 1995).

The trial court based its order of consecutive sentencing upon its finding that Defendant's criminal actions met the criteria set forth in Tennessee Code Annotated § 40-35-115(b)(5). That subsection authorizes consecutive sentencing whenever

> the defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor *with consideration of* the aggravating circumstances arising from
> [1] the relationship between the defendant and victim or victims,
> [2] the time span of defendant's undetected sexual activity,
> [3] the nature and scope of the sexual acts and
> [4] the extent of the residual, physical and mental damage to the victim or victims . . . .

Tenn.Code Ann. § 40-35-115(b)(5) (1997) (emphasis added). There is no doubt that Defendant was convicted and sentenced for two or more offenses involving sexual abuse of a minor. With consideration given to the additional factors, we find that the first and third factors clearly justify consecutive sentencing.

Regarding the first factor, the relationship between the defendant and victim, the fact that Defendant is the victim's father shows that Defendant used a position of trust to commit his criminal acts. Defendant was entrusted with, and indeed responsible for, the six-year-old victim's safe care and well-being during his visitation with her. The trial court stated that it considered this circumstance aggravating. We agree. See State v. Lane, 3 S.W.3d 456, 459 (Tenn. 1999)

As for the third factor, the nature and scope of the sexual acts, the trial court found that the evidence of sexual abuse was significant. The victim testified that her father committed sexual acts with her "fourteen times," that he hurt her, and that he refused to stop even when she hollered and cried. Even though Defendant was not convicted of rape of a child, the testimony of the victim that Defendant penetrated his daughter with his penis on numerous occasions was sufficiently aggravating for purposes of imposing consecutive sentences under § 40-35-115(b)(5). The facts underlying an offense for which a defendant was acquitted may be considered in sentencing so long as they were established by a preponderance of the evidence. See State v. Winfield, 23 S.W.3d 279, 281 (Tenn. 2000).

Defendant also argues that the trial court's use of the familial relationship both to enhance within the range and justify imposing consecutive sentences creates a multiplier effect which is improper according to sentencing principles. The record shows that the trial court used two enhancement factors to justify giving Defendant the maximum sentences for a Class B felony in Range I: factor (1), which applies when the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; and (15), used when the defendant is found to have abused a position of public or private trust. See Tenn. Code Ann. § 40-35-114(1), (15) (1997). Defendant claims that the trial court erred when it used his status as the victim's father to both apply enhancement factor (15) and also impose consecutive sentences.

This issue has been addressed by this Court on several prior occasions. In State v. Meeks, this Court held that consideration of prior criminal activity for both enhancement and consecutive sentencing purposes is permissible. State v. Meeks, 867 S.W.2d 361, 377 (Tenn. Crim. App. 1993); see also State v. Davis, 825 S.W.2d 109, 113 (Tenn. Crim. App. 1991). Specifically, "[t]here is no prohibition in the 1989 Sentencing Act against using the same facts and circumstances both to enhance sentences under applicable enhancement factors and to require those sentences to be served consecutively." Meeks, 867 S.W.2d at 377; see also State v. Davis, 757 S.W.2d 11, 13 (Tenn. Crim. App. 1987).

In light of the above, we affirm the trial court's decision to impose consecutive sentences. We find that Defendant's actions met the criteria set forth in Tenn.Code Ann. § 40-35-115(b)(5) and that the trial court's use of Defendant's relationship to B.S. to both enhance his sentences under Tenn. Code Ann. § 40-35-114(15) and impose consecutive sentences under Tenn Code Ann. § 40-35-115(b)(5) was not improper. Defendant is not entitled to relief on this issue.

### VI. Conclusion

For the forgoing reasons, we AFFIRM the judgment of the trial court.

-19-

_____

THOMAS T. WOODALL, JUDGE