# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 9, 2014

## STATE OF TENNESSEE v. CALVIN REID QUARLES

**Appeal from the Circuit Court for Williamson County**
**No. I-CR046393     Donald P. Harris, Judge**

---

### No. M2014-00117-CCA-R3-CD -Filed October 31, 2014

---

Calvin Reid Quarles, Defendant, was convicted by a Williamson County Jury for theft of property valued over $500. After the denial of a motion for new trial, Defendant perfected this appeal. The following issues are presented for our review: (1) whether the trial court erred in giving the jury charge partially before and partially after closing arguments; and (2) whether the trial court erred by issuing a supplemental jury instruction. After a review of the applicable authorities and the record, we conclude that Defendant waived any challenge to the trial court's completing the jury instructions after closing argument by acquiescing and by failing to raise the issue in a motion for new trial. Further, we conclude that the trial court did not commit error in answering a question posed by the jury during deliberations. Accordingly, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and D. KELLY THOMAS, JR., JJ., joined.

Vanessa Pettigrew Bryan; Public Defender; Robert Wilson Jones, Assistant Public Defender; and Allison Rasbury West, Assistant Public Defender; Franklin Tennessee, for the appellant, Calvin Reid Quarles.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Kim Helper, District Attorney General; and Tammy J. Rettig, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Factual Background*

George David Boston and his daughter, Paige Boston, lived in the Villages of Morningside, a senior living community in Williamson County. On February 2, 2012, Mr. Boston came home around 2:00 p.m. and noticed that his back door was open. When he approached the door, he realized that the deadbolt was "bent and disturbed." Mr. Boston called the police and his daughter, Ms. Boston, who was at work.

Detective David Dixon arrived on the scene. Once the detective arrived, Mr. Boston was permitted to enter the residence and discerned that several items were missing. Included among those items were a thirty-two-inch flat-screen television, a jar of loose change, his deceased wife's jewelry box, a clock radio, an iPod, a laptop, a netbook, and "other miscellaneous items." The jewelry box contained at least a twenty-inch gold chain, a rhinestone necklace, earrings, a beaded necklace, and two pendants purchased in Spain. According to Ms. Boston, the missing items were worth around $3,400. No fingerprints were recovered from the scene.

The burglary occurred on a Thursday afternoon. That following weekend, Ms. Boston distributed flyers containing photographs of the missing jewelry to several local pawnshops. That afternoon, someone from Cashville Gold and Silver Buyers called her to inform her that two of her missing pieces of jewelry were at their shop. Detective Dixon visited the shop to investigate. Defendant was identified as a suspect after Detective Dixon watched surveillance video in which Defendant was seen giving the jewelry to the store owner.[1]

Defendant was arrested. He gave a statement in which he could not give specifics about how or where he obtained the jewelry that he pawned at Cashville Gold and Silver Buyers. He claimed that he bought "a lot of stuff" at flea markets. Defendant was unable to produce a receipt for the items. When confronted with the fact that the items were stolen, Defendant admitted that he did not receive the items from anyone else and that he was the person at Cashville Gold and Silver Buyers. Defendant acknowledged that he received $165 for the items and signed the logbook at the store. Defendant explained that his son Sheldon drove him to the pawnshop but was not involved in the transaction.

As a result of the investigation, Defendant was indicted by the Williamson County

---

[1]The surveillance video was unavailable for viewing at trial. Detective Dixon testified that he attempted to secure the tape from Cashville Gold and Silver Buyers but was unable to do so.

Grand Jury in April of 2012 for one count of aggravated burglary and one count of theft of property valued over $1,000. After a jury trial, Defendant was found not guilty of aggravated burglary and guilty of theft of property valued over $500 but less than $1,000. The trial court sentenced Defendant to fifteen months in incarceration as a Range I, Standard Offender.

Defendant filed a motion for new trial in which he argued that the evidence was insufficient to support the conviction. Additionally, he argued that the trial court improperly responded to a question from the jury and, in so doing, effectively "diminished the requirements of theft of property." The trial court denied the motion for new trial. Defendant appeals.

*Analysis*

On appeal, Defendant complains that the "trial court gave erroneous jury instructions and [Defendant] should be granted a new trial." Specifically, Defendant insists that the trial court did not give the jury a correct and complete charge of the law when the trial judge omitted the mens rea definitions from the jury instructions, allowed the parties to complete their closing arguments, and then continued with the jury charge. Additionally, Defendant complains that the trial court improperly answered a jury question with an "amended instruction" to the theft charge that did not include a definition of knowing. The State contends that Defendant acquiesced to the separation of the jury instructions from the mens rea elements, thus waiving the issue on appeal. Further, the State insists that despite the waiver, the jury instructions were complete and Defendant is not entitled to relief.

*Jury Instructions*

A trial court has a "duty to give a complete charge of the law applicable to the facts of the case." *State v. Harris*, 839 S.W.2d 54, 73 (Tenn. 1992). Anything short of a complete charge denies a defendant his constitutional right to trial by a jury. *State v. McAfee*, 737 S.W.2d 304, 308 (Tenn. Crim. App. 1987). However, Tennessee law does not mandate that any particular jury instructions be given so long as the trial court gives a complete charge on the applicable law. *See State v. West*, 844 S.W.2d 144, 151 (Tenn. 1992). A trial court commits prejudicial error "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." *State v. Hodges*, 944 S.W.2d 346, 352 (Tenn. 1997) (citing *State v. Forbes*, 918 S.W.2d 431, 447 (Tenn. Crim. App. 1995); *Graham v. State*, 547 S.W.2d 531 (Tenn. 1977)). In determining whether jury instructions are erroneous, this Court must review the charge in its entirety and invalidate the charge only if, when read as a whole, it fails to fairly submit the legal issues or misleads the jury as to the applicable law. *State v. Vann*, 976 S.W.2d 93, 101 (Tenn. 1998). Because resolution of issues regarding jury instructions are mixed questions of law and fact, the standard of review is de novo, with no

presumption of correctness. *State v. Smiley*, 38 S.W.3d 521, 524 (Tenn. 2001).

Defendant herein was charged with theft. Tennessee Code Annotated section 39-14-103(2) defines theft as acting "with intent to deprive the owner of property [while] knowingly obtaining or exercising control over the property of another without the owner's effective consent." During jury instructions, the trial court instructed the jury on the elements of theft of property as follows:

> [Trial Court]: Theft of property: Any person who commits the offense of theft of property is guilty of a crime. For you to find the defendant guilty of this offense, the State must have proven beyond a reasonable doubt the existence of the following essential elements:
>
> > (1) that the defendant intentionally or knowingly obtained or exercised control over property owned by George Boston and Paige Boston.
> >
> > (2) that the defendant did not have the owners' effective consent;
> > (3) that the defendant intended to deprive the owner of the property.

The trial court went on to define "obtain," "exercise control," "property," "effective consent," "deprive," and how to determine "value." At the conclusion of the jury instructions, the following exchange took place:

> [Trial Court]: I realized I must have deleted my definitions of intentionally, knowingly, and recklessly. If I can - - I can get that and read it now or I can wait and just read it after ya'll [sic] argue.
>
> [Counsel for the State]: It makes no difference, Your Honor.
>
> [Counsel for Defendant]: Just go ahead now.
>
> [Trial Court]: Go ahead and argue?
>
> [Counsel for Defendant]: No, go ahead - -
>
> [Trial Court]: Well, I have to get her to print it up for me.

[Counsel for Defendant]: (Inaudible) we can argue.

After the closing arguments, the trial court read these "additional definitions" to the jury:

> A person acts intentionally with respect to the nature of his or her conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result.
>
> A person acts knowingly with respect to his or her conduct or through circumstances surrounding conduct when a person is aware of the nature of the conduct or that the circumstances exist.
>
> A person[] acts knowingly with respect to a result of his or her conduct when the person is aware that the conduct is reasonably certain to cause the result.
>
> A person acts recklessly with respect to circumstances of surrounding conduct or the results of conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

We determine that Defendant has waived any issue with regard to whether the trial court improperly gave the jury instructions for mens reas after the closing arguments rather than with the rest of the jury charge. Defendant, as pointed out by the State, acquiesced to this procedure at trial. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). Moreover, Defendant did not specifically raise this issue in a motion for new trial. Tennessee Rule of Appellate Procedure 3(e) provides that in "all cases tried by a jury, no issue presented for review shall be predicated upon . . . [a] ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived." *See also State v. Lowe-Kelley*, 380 S.W.3d 30, 33 (Tenn. 2012) (noting that "[a] defendant who fails to provide specific grounds for relief in a motion for new trial risks failing to preserve those grounds for appeal").

*Jury Questions*

Later, during deliberations, the jury submitted two written questions to the trial court.

-5-

The first question read as follows: "Number one mean [sic] he knew it was stolen even if he did not steal it himself?" The trial court informed the parties that it thought the jurors were referring to the first element of the offense of theft, and proposed the following answer:

> If you find beyond a reasonable doubt that, one, [Defendant] knowingly exercised control over property owned by George and Paige Boston, and two, [Defendant] knew he did not have the owners' effective consent, and three, [Defendant] intended to deprive the owner of the property, then you have found [Defendant] guilty of theft.

The trial court commented that it was "really just restating the elements of the crime with a few words left out." Counsel for Defendant objected to the "restating" of the charge and asked the trial court to "refer to the charge as given." When the trial court called the jury back in, he stated that he interpreted the question as "referring to the first element of the offense of theft." The trial court then instructed the jury as follows:

> [I]f you find beyond a reasonable doubt that [Defendant] knowingly exercised control over property owned by George and Paige Boston and, two, [Defendant] knew he did not have the owners' effective consent, and, three, [Defendant] intended to deprive the owner of the property, then you have found [Defendant] guilty of theft.

Trial courts have "the authority to respond to jury questions with a supplemental instruction." *Forbes*, 918 S.W.2d at 451. The "appropriate course of action" for a trial court responding to a jury question is to "bring the jurors back into open court, read the supplemental instruction . . . along with a supplemental instruction emphasizing that the jury should not place undue emphasis on the supplemental instruction, and then allow the jury to resume its deliberations." *State v. Bowers*, 77 S.W.3d 776, 791 (Tenn. Crim. App. 2001). Any omission in the jury instructions of an element of an offense is subject to harmless error analysis. *State v. Faulkner*, 148 S.W.3d 45, 58 (Tenn. 2005).

Here, the trial court simply answered the question with its supplemental instruction. However, Defendant did not raise any objection to the trial court's procedure in providing the supplemental instruction to the jury. Instead, Defendant argues that the trial court's supplemental instruction was erroneous because it omitted a portion of the definition of theft, namely the words "intentional" and "intentionally."

In Tennessee, there are four culpable mental states: intentionally, knowingly, recklessly, and criminally negligent. *See* T.C.A. § 39-11-302. If the statute defining the offense does not plainly dispense with a mental element, then "intent, knowledge, or

-6-

recklessness suffices" to establish the culpable mental state. T.C.A. § 39-11-301(c); *State v. Page*, 81 S.W.3d 781, 786 (Tenn. Crim. App. 2002); *State v. Chester Wayne Walters*, No. M2003-03019-CCA-R3-CD, 2004 WL 2726034, at *12 (Tenn. Crim. App. Nov. 30, 2004), *perm. app. denied* (Tenn. Mar. 21, 2005). If the elements of an offense have distinctly varying mens rea, then the trial court must clearly instruct the jury about the mental state for each element. *State v. Howard*, 926 S.W2d 579, 587 (Tenn. Crim. App. 1996), *overruled on other grounds in State v. Williams*, 977 S.W.2d 101 (Tenn. 1998). "Each of these mental states is defined with reference to two or three of the following possible conduct elements: (1) nature of defendant's conduct, (2) circumstances surrounding the defendant's conduct, and (3) result of the defendant's conduct." *Page*, 81 S.W.3d at 787 (citing T.C.A. § 39-11-302).

"'Intentional' refers to a person who acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." T.C.A. § 39-11-302(a). "'Knowing' refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." T.C.A. § 39-11-302(b). A person can also act knowingly "with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." T.C.A. § 39-11-302(b) (emphasis added). "'Reckless' refers to a person who acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." T.C.A. § 39-11-302(c).

As set out above, Tennessee Code Annotated section 39-14-103(a) defines theft as acting with intent to deprive the owner of property while knowingly obtaining or exercising control over the property of another without the owner's effective consent.

When the trial court herein answered the jury's question, he correctly stated "[I]f you find beyond a reasonable doubt that the Defendant *knowingly* exercised control over property owned by George and Paige Boston and, two, the Defendant *knew* he did not have the owner's effective consent, and, three, the Defendant *intended* to deprive the owner of the property, then you have found the Defendant guilty of theft" (emphases added). The trial court did not use the words "intentional" and "intentionally" in element three regarding depriving the owner of the property but instead used the word "intended." While the trial court included the word "intentionally" in the original jury instructions in regards to obtaining or exercising control over property owned by the Bostons, element 1, it was left out in the answer to the jury question. The instruction as given to the jury in response to their question was entirely consistent with the theft of property statute and the pattern jury

instructions.

Further, Defendant did not deny possessing the jewelry and pawning it at Cashville. Moreover, the complete definition for theft, including the words "intentional" and "intentionally," appeared in the jury instructions given by the trial court. Those terms were then separately defined by the trial court. *See State v. Leach*, 148 S.W.3d 42, 58 (Tenn. 2004) ("In determining whether instructions are erroneous, th[e] Court must review the charge in its entirety and read it as a whole."). The jury charge, taken as a whole, properly defined theft and the requisite mens rea. This issue is without merit.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
TIMOTHY L. EASTER,/JUDGE